Filed 1/28/22  Stefanac v. Dome Construction Corp. CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LANA STEFANAC, Plaintiff and Respondent, v. DOME CONSTRUCTION CORPORTATION, Defendant and Appellant. | A162787 (Alameda County Super. Ct. No. RG-2006-6919) |

Defendant Dome Construction Corporation (Dome) appeals from an order denying its petition to compel plaintiff Lana Stefanac to arbitrate their dispute.  We affirm.

**BACKGROUND**

**The Parties and the General Setting**

Dome is a commercial construction company headquartered in San Francisco.  Stefanac is a carpenter who worked for Dome at various times, most recently in 2020, at a construction site in Newark, the employment that gave rise to the dispute here, which employment will be discussed in more detail below.

As described in a complaint Stefanac would come to file, she first worked for Dome in 2017, at a site in Marin County.  And according to that complaint—which, of course, contains only allegations—Stefanac's first

1

experience was not uneventful. To the contrary, Stefanac, a lesbian, described that she was working at the BioMarin site in Novato alongside co-workers Craig Bell and Joaquin Gutierrez. Gutierrez was using a heavy wrecking bar to demolish flooring, and Stefanac suggested that Bell remove his dark shades in the dimly lit work area. Bell then began taunting and threatening her, making comments such as "Hit that bitch, Joaquin! Hit that motherfucking bitch with the bar!" Bell also made vulgar sexual remarks and comments about "shooting [plaintiff] in the motherfucking face." Stefanac reported this incident to the foreman, Doug Oram, superintendent Mike Wade, human resources manager Michelle Austin, and field manager, Steve Ballardo. Wade terminated Bell and informed the crew members they could be terminated for similar behavior. And in doing so, he identified Stefanac as the complainant.

However, Stefanac alleged, this did not prevent similar behavior, but rather made her "a target for further harassment, discrimination, and retaliation that would recur on an ongoing and continuous basis for several years."

In 2018, Stefanac first worked at a Dome site in San Mateo County. And then, around June, she was working at the Boehringer Ingelheim site in Newark, working alongside a coworker, Sam Fontana. In the words of the complaint, "Fontana asked whether plaintiff was married or had a boyfriend. Plaintiff replied that she was a lesbian and had a girlfriend. Fontana asked whether plaintiff's girlfriend was 'hot' and whether plaintiff 'shared.' Fontana stated something to the effect of, 'I could eat pussy all night.' Plaintiff clearly stated that these questions and comments were inappropriate. Later that day, while they worked together in a two-person lift, Fontana repeatedly pushed his clothed penis into plaintiff's back and

2

laughed.  Plaintiff reported to Ballardo that Fontana was 'perverted,' but Ballardo did not ask any questions about this or take any action to correct Fontana's misconduct."

In 2019, Stefanac was working at the Verily site in South San Francisco.  The carpenter foreman at the site, Rick Santaella told his crew that Stefanac was responsible for having another worker fired for sexual harassment, and said that no one should trust her.  Later that day, crew member Raul Garibaldi asked Stefanac in front of other crew members whether what Santaella had stated was true.  Stefanac stated that this was not true, while the rest of the crew stared at her angrily.  Later, when Stefanac finished a job and asked Santaella what he wanted her to do next, he "said something to the effect of, 'You don't want to know what I want you to do next.'  His tone was malicious."

Stefanac alleged that Santaella's announcement promoted the idea that she was not to be trusted, specifically because she reported sexual harassment.  This subjected her "to an atmosphere of intimidation, retaliation, and hatred.  [Stefanac] reasonably feared for her safety and career and had no reasonable choice but to quit working for [Dome] to protect herself."  And she left her employment in or around August 2019.

Despite the above, in early 2000, Stefanac "sought a new assignment" with Dome, in her words hoping "that she would return to a safer and more tolerant work environment."

It was not to be.

**The 2020 Employment**

As noted, it was Stefanac's 2020 employment at Dome that gave rise to the dispute here, the pertinent circumstances of which Stefanac did testify about under oath.  We thus quote from that testimony.

3

"On February 12, 2020, I was rehired at Dome and began working that day at the Allogene site in Newark. I worked under the supervision of [Santaella.] I was not asked to sign any papers before I started performing labor at the site.

"One of Santaella's crew members was Miguel Mendoza (Mendoza), an apprentice. On February 12, 2020, Mendoza repeatedly yelled homophobic slurs and threats at the worksite. I complained about this conduct to Santaella on my first day. Santaella stated that Mendoza was 'young and immature' but did not take any action to stop Mendoza's conduct.

"On February 13, I again observed Mendoza using homophobic slurs and making violent threats. I observed that Santaella was in the lunch trailer near Mendoza and could clearly hear Mendoza. However, Santaella took no action to stop Mendoza's conduct.

"On or about February 18, . . . I reported Mendoza's conduct and Santaella's inaction to Vincenzo Piazza (Piazza), a Dome superintendent.

"On February 18, . . . I was called into the Allogene site trailer by Mike Wade (Wade), the superintendent. Wade told me that I needed to 're-sign' some 'pre-employment' documents and told me I had 'already signed' them.

"Wade had me sit at his laptop computer in the trailer. He told me to click through a series of screens that were essentially blank. As I recall, I had the option to click 'ok' on each page, which would produce my signature. I did not see the documents I was signing, nor did I see any links to the documents I was signing. I told Wade that I did not see the documents I was supposed to sign. Wade told me just to sign them. Wade led me to believe that I was only signing documents that I had previously seen and agreed to sign. Wade did not offer to provide me the documents or direct me as to how I could access them on the computer. He did not tell me that I could have

4

more time to consider or review documents. My understanding was that I was expected to quickly finish this routine task and return to my work. I signed the documents sight unseen.

"I do not recall ever signing an arbitration agreement with Dome prior to February 18, 2020, or in connection with any other period that I worked for Dome. I did not contemplate on February 18, 2020, that 're-signing' documents would include an arbitration agreement."

**The Proceedings Below**

On July 2, 2020, represented by Spencer Young and Ehud Appel of Spencer Young Law, PC, Stefanac filed a complaint in Alameda County Superior Court. It named one defendant, Dome, and alleged seven causes of action for: harassment (FEHA); discrimination (FEHA); retaliation (FEHA); failure to investigate and prevent harassment, discrimination, and retaliation (FEHA); constructive discharge in violation of public policy; breach of contract; and breach of the implied covenant of good faith and fair dealing in contracts.

On July 31, an attorney representing Dome wrote to Mr. Appel regarding the preservation of evidence. The letter stated that the attorney "will be representing [Dome's] interests in connection with the claims asserted by former employee Lana Stefanac in the above-mentioned lawsuit in Alameda Superior Court." The letter made no mention of arbitration.

On September 10, Dome filed its answer. The answer asserted 29 affirmative defenses, the last of which alleged that Stefanac's "claims are barred because she failed to exhaust the grievance and arbitration procedure in the collective bargaining agreement before commencement of the lawsuit." Nothing was said about any individual arbitration agreement.

5

Apparently both parties served discovery, as on October 23, Dome's attorney sent Mr. Appel an e-mail stating that Stefanac's discovery responses were overdue, and that Dome would be "forced to seek the intervention of the court" if such responses were not forthcoming. The letter made no mention of any arbitration agreement or duty to arbitrate.

On November 6, Stefanac served verified, substantive discovery responses and produced voluminous documents, specifically 396 pages of documents, including medical records, text messages, e-mails, information about witnesses, and specific details supporting Stefanac's allegations.

On December 2, the attorney for Dome requested a two-week extension for its own discovery responses; counsel for Stefanac agreed, making such responses due on December 29.

On December 18, Mr. Appel received a letter from Dome's attorney that referred to an "arbitration agreement."

On December 29, Dome served its discovery responses that consisted entirely of objections to every request. Dome did not answer a single question or provide a single document, but rather invoked the claimed arbitration agreement as a bar to every single request.

On January 29, 2021, Dome filed a motion to compel arbitration and stay proceedings. It was accompanied by a memorandum of points and authorities, and several declarations, of Gary Dorfman, Dome's accounting systems supervisor; Wade, the Dome superintendent; Austin, Dome director of human resources; Collin Cook, one of Dome's attorneys; and some Dome employees. Some of the declarations purported to authenticate exhibits, the result of which was that Dome's moving papers consisted of 240 pages.

On February 17, Stefanac filed her opposition, which included her declaration quoted in some detail above.

6

On February 24, Dome filed its reply along with six pages of evidentiary objections, objecting to nine specific pieces of Stefanac's declaration, most of which objections were frivolous.[1]

The motion was set for hearing on March 3, prior to which the trial court had issued a tentative ruling denying the motion. Dome contested, and argument was held, at which the attorney for Dome requested a statement of decision. And on March 5, the trial court entered its decision, styled as "Order—Motion to Compel Denied"—a comprehensive order indeed. After setting forth in detail the procedural background, the order held as follows:

---

[1] Three examples should suffice, objections numbered five, six and nine. They are as follows:

| "5. Wade had me sit at his laptop in the trailer. [Plaintiff's Decl., ¶ 8, Page 2, Line 25.] | Lacks foundation/personal knowledge. Evidence Code, §§ 403, 702[, subd.] (a).) Speculation. (Evidence Code, §§ 800 et seq.). |
| --- | --- |
| "6. He told me to click through a series of screens that were essentially blank. As I recall, I had the option to click 'ok' on each page, which would produce my signature. I did not see the documents I was signing, nor did I see any links to the documents I was signing. [Plaintiff's Decl., ¶ 8, Page 2, Lines 26–28.] | Best Evidence Rule. (Evidence Code, § 1523[, subd.] (a).) Vague as to 'documents I was signing.' (Evidence Code, § 765[, subd.] (a).) Vague as to 'links to documents I was signing.' (Evidence Code, § 765[, subd.] (a).) |
| "9. I signed the documents sight unseen. [Plaintiff's Decl., ¶ 9, Page 3, Lines 5–6.] | Vague as to 'documents.' (Evidence Code, § 765[, subd.] (a).)" |

"The Court reviews the parties' evidence to determine whether a valid agreement to arbitrate exists and whether there are reasons why the agreement is unenforceable. See *Ramos v. Westlake Services LLC* (2015) 242 Cal.App.4th 674, 685 [court must begin by determining whether plaintiff signed the agreement containing an arbitration clause]. Based on the extensive evidence presented by the parties, the Court concludes that Defendant has not met its burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. See Civil Code section 1633.9 and *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 842 [(*Ruiz*)] [trial court may weigh conflicting evidence to determine whether arbitration agreement exists]; and *Ramos*, *supra*, 242 Cal.App.4th at [p.] 685 [trial court serves as the trier of fact when reviewing the parties' conflicting evidence on a motion to compel arbitration].

"The subject Employment-At-Will and Arbitration Agreement that Plaintiff allegedly reviewed and signed on February 18, 2020, is attached to the declaration of Gary Dorfman as Exhibit F. Mr. Dorfman, the current accounting systems supervisor, states that the company uses a web-based portal called Viewpoint for its onboarding process and for other business-related reasons. Michael Wade, a superintendent, states in his declaration that on February 18, 2020, he asked Plaintiff to go to his jobsite trailer at Allogene, in Newark, to execute some employment documents by accessing Viewpoint on his laptop computer. Plaintiff was called away from her duties as a carpenter to go to the trailer. See *OTO, LLC v. Kho* (2019) 8 Cal.5th 111, 126–127 [procedural unconscionability could be found where employee is asked to review and sign documents without prior notice while performing his or her job duties]. When Plaintiff, who previously worked for Defendant from 2017 to 2019, and who had been working at the Allogene project since

February 12, 2020, asked Wade what she was signing, he told her that they were the same documents that she had previously signed. Plaintiff states in her declaration that she did not see the text of any documents, but she nevertheless clicked the 'ok' button on each screen in order to produce an electronic signature. When Plaintiff told Wade that she did not see the documents or the links, he told her that she should just sign them. One of the documents that she signed that day was the two-page, single-spaced Employment-At-Will and Arbitration Agreement. None of the employees of Defendant who submitted declarations supporting the motion to compel arbitration states in their declarations that Plaintiff executed an arbitration agreement electronically or in person when she worked for Defendant from 2017 to 2019. Plaintiff therefore had a reasonable basis to conclude that she was not being asked to sign an agreement waiving her right to seek redress through the courts should a dispute arise in connection with her employment. The Court's determination that Defendant failed to prove its claim that Plaintiff voluntarily agreed to the terms of the arbitration agreement is also supported by the fact that Plaintiff was not required to execute any onboarding documents when she returned to Dome Construction Corporation on February 12, 2020, and the fact that she had already made complaints of workplace harassment to the carpenter foreman, Rick Santaella."

The order then described—and, we note, accurately—how "the facts in this case bear a strong resemblance to those in *Ruiz*." And the order concluded as follows: "In this case, the Court is concerned that Plaintiff may have been induced to execute certain agreements on Michael Wade's laptop that she did not have an opportunity to review. The Court is concerned the company may have wanted to have Plaintiff sign the arbitration agreement because it became concerned that she might file an employment action. The

9

testimony presented by Defendant all concern the company's custom and standard practices when a new employee goes through the onboarding process using Viewpoint. There is evidence, however, that Plaintiff was not going through the onboarding process because she had already worked for Defendant for nearly two-and-a-half years from 2017 to 2019. Michael Wade states in his declaration that new employees who do not have computer access will often use his computer in the jobsite trailer to execute documents or to do their onboarding. Wade, however, does not say that his reason for asking Plaintiff to go to the jobsite trailer on February 18, 2020, was to review and complete documents necessary for the onboarding of new employees. For example, Wade does not indicate that Plaintiff was told that she had to select her health insurance or dental insurance plan."

Finally, the order expressly overruled all nine of Dome's evidentiary objections.

On March 18, Dome filed 38 pages of material objecting to the court's order: 10 pages of "objections" and a 28-page declaration of Dome's attorney in claimed support of the objection. The objections cited to Code of Civil Procedure sections 632 and 634, dealing with statements of decision.

On March 23, notice of entry of order was filed, and on May 3, Dome filed its appeal.

## DISCUSSION

### Introduction

Dome's brief has a three-page introduction that begins with the assertion that the "trial court erred as a matter of law in holding that [Dome] failed to establish the existence of a valid and enforceable arbitration agreement." The introduction then goes on at some length, in rather repetitive language, with their claimed basis of its argument, some of which

we excerpt here.  Thus:  "Under the California Supreme Court's decision in *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394 [(*Rosenthal*)], allegations of fraud do not render a written contract void where the contracting party had a reasonable opportunity to discover the real terms of the contract, before signing it.  Here, the trial court failed to assess whether [Stefanac] had a reasonable opportunity to review the agreement prior to its execution.  [¶]  In fact, the record contains evidence that [Stefanac] had ample opportunity to review the agreement, prior to electronically signing the agreement."

The introduction then asserts that "instead of acknowledging the record evidence showing [Stefanac's] ample opportunity to review" the agreement, the trial court order "rests on four factual findings, all of which are unrelated to this critical issue."  Then, after setting forth the essence of those factual findings, the introduction concludes with this:  "None of the facts relied on in the trial court's order supports a finding that [Stefanac] was denied the requisite opportunity to review the agreement.  In fact, the trial court's order makes no express determination about whether [Stefanac] had a reasonable opportunity to review the agreement. . . .  [¶]  Nonetheless, on the bare basis of these four factual findings, the trial court held that [Dome] had failed to prove the existence of a valid and enforceable arbitration agreement.  However, *Rosenthal* controls and given that record evidence shows [Stefanac] had an ample opportunity to review the agreement before signing it, the trial court's factual findings are insufficient as a matter of law to deny the existence of a valid arbitration agreement."

Dome is very wrong, its argument way off the mark in several respects: it misrepresents what the trial court did here; it ignores the fundamental

11

principles of appellate review; and it misreads *Rosenthal*. On top of all that, it is based on the wrong standard of review.

**The Standard of Review**

Dome begins its argument asserting that the standard of review is de novo, saying this: "Arguments presenting pure questions of law, not involving the resolution of disputed facts, are subject to the reviewing court's de novo review. [Citations.] Accordingly, this court may give no deference to the trial court's ruling and instead decides the matter anew. (*Ibid.*) Such independent review is warranted when the appellate court is in as good a position (or better) than the trial court to decide the issue . . . ."

Passing over the obvious misstatement referring to cases "not involving the resolution of disputed facts," Dome ignores the law set forth in numerous cases, including from this District—indeed, this very court. Illustrative is our opinion in *Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419 (*Robertson*), where we noted as follows: "There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]" (*Robertson, supra*, 132 Cal.App.4th at p. 1425; accord, *Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 630 [Division Four].)

Here, as noted, the trial court dealt with factual issues, as the substance of its order expressly noted, beginning with the recognition that it "reviews the parties' evidence to determine whether a valid agreement to arbitrate exists and whether there are reasons why the agreement is unenforceable." The trial court addressed various factual issues as quoted

12

above, dealing with Stefanac's testimony as well as that of Wade. And the trial court appropriately drew various inferences from that testimony, and decided, based on its thorough analysis, that Dome had not met its burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence—a burden, of course, Dome was required to meet. (*Engalla v. Permanente Medical Group* (1997) 15 Cal.4th 951, 972.)

In short, the decision is "one of fact," and our review is for substantial evidence. And there is plenty.[2]

**The Decision is Supported by Substantial Evidence**

We begin by noting that while Dome's brief gives lip service to the facts the trial court did decide, the brief throughout refers to the other evidence it asserts the trial court did not consider, as though this is of some significance. It is not, for several reasons, beginning with the fundamental appellate principle that all evidence must be viewed most favorably to Stefanac and in support of the decision. (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925–926; *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; see *In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 358 ["Where statement of

---

[2] Despite its assertion that review is de novo, Dome's opening brief inexplicably ends with a brief argument II that "the record fails to contain substantial evidence in support of the trial court's decision." The argument includes two sub-parts, the first of which asserts that "substantial evidence does not support the trial court's determination that [Dome] failed to prove the existence on an arbitration agreement," going on to assert that "the record here provides no basis for rejecting [Dome's] evidence demonstrating the existence of a valid and enforceable arbitration agreement. The 'daunting' substantial evidence standard of review is therefore readily surmountable." And the second asserts that "on this record, no reasonable factfinder would conclude that [Stefanac] was denied an opportunity to review the arbitration agreement."

As will be seen, such assertions are in utter disregard of the rules of appellate review.

decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision"].)

Two fundamental corollaries to the substantial evidence rule are the "conflicting evidence" rule and the "conflicting inferences" rule, both of which require that we view the record in the light most favorable to Stefanac and to resolve all evidentiary conflicts and indulge all reasonable inferences in support of the decision. (*Leung v. Verdugo Hills Hosp.* (2012) 55 Cal.4th 291, 308; *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.) More specifically, under the "conflicting evidence" rule, we resolve all evidentiary conflicts in favor of Stefanac and affirm so long as the evidence favoring Stefanac is sufficient to support the judgment. (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479 [conflicting evidence in declarations and affidavits].) Similarly, under the rule of conflicting inferences, we must indulge all reasonable inferences in favor of Stefanac. (*County of Kern v. Jadwin* (2011) 197 Cal.App.4th 65, 72–73.)[3]

Dome's attempt to point to other evidence it claims supports it is misguided, as we must affirm even if there is substantial contrary evidence.

---

[3] Indeed, the rule of conflicting inferences defeats Dome even if the evidence was, as Dome might be said to urge it, undisputed. As the Supreme Court has confirmed, citing numerous authorities, "[I]t is settled that when conflicting inferences may be drawn from undisputed facts, the reviewing court must accept the inference drawn by the trier of fact so long as it is reasonable. (*Hamilton v. Pacific Elec. Ry. Co.* (1939) 12 Cal.2d 598, 602–603; *Mah See v. North American Acc. Ins. Co.* (1923) 190 Cal. 421, 426 [overruled on other grounds in *Zuckerman v. Underwriters at Lloyd's* (1954) 42 Cal.2d 460, 474]; see 9 Witkin, Cal. Procedure [(5th ed. 2008)] Appeal, § 376, pp. 434–435; Eisenberg et al., Cal Practice Guide: Civil Appeals and Writs [(The Rutter Group 2016)] ¶ 8:60, p. 8-29.)" (*Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 913.)

14

(See *Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 874.)  As the court put it in *Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1245, "We do not review the evidence to see if there is substantial evidence to support the losing party's version of events, but only to see if substantial evidence exists to support the verdict in favor of the prevailing party."

In short, Dome's argument is based on a version of the record that is contrary to all principles of appellate review—not to mention that it fails to address the significance of the trial court's finding that it failed to meet its burden of proof.  In light of this, Dome has a heavy, perhaps insurmountable, burden on appeal, as set forth, for example, in *Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466 (*Sonic*):  " 'Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.  [Citations.]  Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527–1528.)"  (Accord, *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 967.)

The Supreme Court described the same principle over 75 years ago, in *Roesch v. De Mota* (1944) 24 Cal.2d 563, observing as follows:  "In substance the trial court found and concluded that the plaintiffs and those equally charged with them in sustaining the burden had not proved payment by a preponderance of evidence.  The problem here is not whether the appellants on the issue of payment failed to prove their case by a preponderance of the evidence.  That was a question for the trial court and it was resolved against

15

them. The question for this court to determine is whether the evidence compelled the trial court to find in their favor on that issue." (*Id.* at pp. 570–571.)

One recent case described the burden imposed by *Sonic* this way: " ' "[w]here, as here, the judgment is against the party who has the burden of proof, it is almost impossible for him to prevail on appeal by arguing the evidence compels a judgment in his favor. That is because unless the trial court makes specific findings of fact in favor of the losing [party], we presume the trial court found the [party's] evidence lacks sufficient weight and credibility to carry the burden of proof. [Citations.] We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence." ' [Citation.] 'The appellate court cannot substitute its factual determinations for those of the trial court; it must view all factual matters most favorably to the prevailing party and in support of the judgment. [Citation.] ' "All conflicts, therefore, must be resolved in favor of the respondent.' [Citation.]" [Citation.]' [Citation.]" (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1067.)

The trial court held that the facts here mirrored those in *Ruiz*, *supra*, 232 Cal.App.4th 836, which affirmed the denial of a motion to compel arbitration in a setting, like that here, that involved an electronic signing of the arbitration agreement. (*Ruiz*, at pp. 838, 840.) While the factual issues there were different than those here, suffice to say that the trial court determined that the moving party failed to prove the existence of a valid arbitration agreement, a required element of a motion to compel arbitration. *Ruiz* was just another case so holding, joining many others, including these:

16

*Fabian v. Renovate America, Inc.*, *supra*, 42 Cal.App.5th at p. 1069 [defendant failed to prove plaintiff electronically signed contract because defendant did not explain "Docusign" process];

*Long v. Provide Commerce, Inc.* (2016) 245 Cal.App.4th 855, 867 [consumer did not agree to website's terms of use containing an arbitration clause in a hyperlink because the terms of use were not conspicuous]; and

*Ramos v. Westlake Services LLC*, *supra*, 242 Cal.App.4th at p. 690 [plaintiff relied on a translated version of agreement that did not contain an arbitration clause].

Dome's brief quotes the trial court's order finding that Stefanac "had a reasonable basis to conclude that she was not being asked" to waive her right to go to court, and that Dome "failed to prove its claim that [Stefanac] voluntarily agreed" to the arbitration agreement. So far, so good. Dome's brief then goes on to say this: "The trial court's order notes that the parties submitted 'extensive evidence'—but conspicuously only discusses four specific facts in support of its reasoning. [Citation.]" And, the opening brief goes on, the trial court ignored that "the agreement was readily available for [Stefanac] to read" and that she had ample notice that she was signing an arbitration agreement and a "reasonable opportunity to review it." Dome's brief ends with this sub-argument: "The trial court erred by failing to make a finding as to whether [Stefanac] had a reasonable opportunity to review the arbitration agreement, before signing it."

However inappropriate such generic claims may be, they pale in comparison to this specific assertion by Dome: "When [Stefanac] reviewed and signed the Agreement, Superintendent . . . Wade was present in [Dome's] jobsite trailer to answer any questions about the Viewpoint platform and the documents that [she] was reviewing and executing. [Citation.] As a

17

practice . . . Wade does not pressure employees into signing any agreement. [Citation.] Employees may review the documents at their own pace. [Citation.] Wade will also provide a printed copy of the documents to any employee upon request. [Citation.] [¶] In his declaration, . . . Wade noted that when [she] reviewed and signed the documents, he did not recall [Stefanac] asking any questions about the onboarding documents or the Agreement. [Citation.] Wade further noted that he has never instructed or asked any employee to sign a documents or agreement before first having the opportunity to review the document. [Citation.]" In light of the law of substantial evidence review, all we can say is "wow."

Finally we note that *Rosenthal* is hardly all that Dome cracks it up to be. While it says what it says, it certainly does not hold that an "opportunity to review" trumps all else, as manifest by the decisions in the cases noted above denying arbitration for failure to prove a valid arbitration agreement. Moreover, among other things *Rosenthal* says that "[a] contract may, however, be held wholly void, despite the parties' apparent assent to it, when, " 'without negligence on his part, a signer attaches his signature to a paper assuming it to be a paper of a different character." ' " (*Rosenthal*, *supra*, 14 Cal.4th at p. 420.)

Were all that not enough, we note Code of Civil Procedure section 1281.2, which provides that even if the moving party establishes the existence of a written agreement to arbitrate—which, as noted, Dome did not do here—arbitration will be denied if "[g]rounds exist for recission of the agreement." Such grounds exist here where the evidence supports fraud or mistake. (See Civ. Code, §§ 1550, 1567, 1572, 1573, 1577.)[4]

---

[4] In light of the result we reach, we need not discuss Stefanac's alternative argument that Dome waived any right to compel arbitration by

## DISPOSITION

The order denying the motion to compel arbitration is affirmed. Stefanac shall recover her costs on appeal.

---

its delay and its use of the legal process in obtaining discovery. (See, e.g., *Burton v. Cruise* (2010) 190 Cal.App.4th 939; *Zamora v. Lehman* (2010) 186 Cal.App.4th 1; and *Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205.)

_____

Richman, Acting P.J.


We concur:


_____

Stewart, J.


_____

Miller, J.


*Stefanac v. Dome Construction Corporation* (A162787)


20