Filed 3/24/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JOHNATHON GREGG, | B302925 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. BC719085 |
| UBER TECHNOLOGIES, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge. Affirmed in part and reversed in part.

Littler Mendelson, Andrew Spurchise, Sophia B. Collins; Gibson, Dunn & Crutcher, Theane D. Evangelis, Blaine H. Evanson and Bradley J. Hamburger for Defendants and Appellants.

Outten & Golden, Jahan C. Sagafi, Adam Koshkin, Rachel W. Dempsey; Girardi & Keese, Thomas V. Girardi, Schultz and Bennett, Stephen J. Shultz and Mark T. Bennett for Plaintiff and Respondent.

# INTRODUCTION

Johnathon Gregg sued Uber Technologies, Inc., and Rasier-CA, LLC (collectively, "Uber"), under the Private Attorneys General Act of 2004 (PAGA), Labor Code section 2698 et seq.[1] He alleged Uber willfully misclassified him as an independent contractor rather than an employee, which led to numerous other Labor Code violations. In response, Uber moved to compel arbitration under the "Arbitration Provision" in the "Technology Services Agreement" ("TSA"), which Gregg accepted to use Uber's smartphone application and become an Uber driver.

The trial court denied Uber's motion and, in April 2021, this court affirmed. The United States Supreme Court vacated the affirmance in June 2022, when it granted Uber's petition for writ of certiorari and remanded the case for further consideration in light of *Viking River Cruises, Inc. v. Moriana* (2022) ___ U.S. ___ [142 S.Ct. 1906, 213 L.Ed.2d 179] (*Viking River*).

In light of *Viking River*, we first determine the TSA's PAGA Waiver is invalid and must be severed from the Arbitration Provision. We then conclude that under the Arbitration Provision's remaining terms, Gregg must resolve his claim for civil penalties based on Labor Code violations he allegedly suffered (i.e., his individual PAGA claim) in arbitration, and that his claims for penalties based on violations allegedly suffered by other current and former employees (i.e., his non-individual PAGA claims) must be litigated in court. Lastly, we conclude that under California law, Gregg is not stripped of standing to pursue his non-individual claims in court simply because his individual claim must be arbitrated. Consequently, his non-individual

---

1       All statutory references are to the Labor Code.

claims are not subject to dismissal at this time. Instead, under the Arbitration Provision, they must be stayed pending completion of arbitration.

Accordingly, we affirm in part and reverse in part the order denying Uber's motion to compel arbitration. We remand the case to the trial court with directions to: (1) enter an order compelling Gregg to arbitrate his individual PAGA claim; and (2) stay his non-individual claims pending completion of arbitration.

## BACKGROUND

Uber is a technology company that has developed a smartphone application known as the "Uber App," which connects riders with drivers to arrange transportation services. As of December 11, 2015, drivers wanting to use the Uber App must first enter into the TSA, which contains an Arbitration Provision.

In section i, the Arbitration Provision states it is "intended to apply to . . . disputes that otherwise would be resolved in a court of law" and "requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action." (Bolded text omitted.) These disputes include "disputes arising out of or related to [the driver's] relationship with [Uber]" and "disputes regarding any . . . wage-hour law, . . . compensation, breaks and rest periods, . . . [and] termination[.]"

The Arbitration Provision also identifies the claims and issues not included in its scope. Of relevance to this appeal, it does not apply to "[a] representative action brought on behalf of others under [PAGA], to the extent waiver of such a claim is deemed unenforceable by a court of competent jurisdiction[.]" The

Arbitration Provision also states "the validity of [its] PAGA Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator."

The Arbitration Provision's PAGA Waiver states: "Notwithstanding any other provision of [the TSA] or the Arbitration Provision, to the extent permitted by law, (1) You and [Uber] agree not to bring a representative action on behalf of others under [PAGA] in any court or in arbitration, and (2) for any claim brought on a private attorney general basis—i.e., where you are seeking to pursue a claim on behalf of a government entity—both you and [Uber] agree that any such dispute shall be resolved in arbitration on an individual basis only (i.e., to resolve whether you have personally been aggrieved or subject to any violations of law), and that such an action may not be used to resolve the claims or rights of other individuals in a single or collective proceeding (i.e., to resolve whether other individuals have been aggrieved or subject to any violations of law)[.]" (Bolded text omitted.)

Drivers who did not wish to be bound by the Arbitration Provision could opt out in the 30-day period following their acceptance of the TSA. Those who did not exercise this option in that time were bound by the Arbitration Provision.

Gregg signed up to use the Uber App on October 10, 2016 and accepted the TSA three days later. He did not opt out of the Arbitration Provision in the following 30 days.

In August 2018, Gregg filed a complaint against Uber, asserting a single claim under PAGA on behalf of himself and other current and former employees. He alleged Uber willfully misclassified him and other current and former employees as independent contractors, which led to its violation of California

4

Wage Order 9-2001 and numerous other Labor Code provisions. Gregg's operative complaint only seeks to recover civil penalties for the alleged violations.

Uber moved to compel arbitration, seeking an order enforcing the PAGA Waiver by: (1) requiring Gregg to arbitrate his individual claim; and (2) dismissing and/or striking his non-individual PAGA claims. In the alternative, Uber requested an order: (1) "compelling [Gregg] to arbitrate the issue(s) of . . . whether he was properly classified as an independent contractor . . . and/or questions of enforceability or arbitrability"; and (2) staying all judicial proceedings until its motion was resolved and, if arbitration was ordered, extending the stay until its completion.

In December 2019, the trial court denied Uber's motion, reasoning that under California law at the time: (1) whether a plaintiff is an "aggrieved employee" within the meaning of PAGA is an essential element of a PAGA claim, not a "separate standing issue" capable of being "parse[d] out" for arbitration; and (2) the PAGA Waiver was not enforceable. In April 2021, applying *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*) and its progeny, a different panel of this court affirmed the trial court's order. (*Gregg v. Uber Tech.* (Apr. 21, 2021), B302925 [nonpub. opn.])

In June 2022, the United States Supreme Court granted Uber's petition for writ of certiorari, vacated this court's judgment, and remanded the case for further consideration in light of *Viking River*. Consequently, in August 2022, this court vacated its April 2021 opinion, recalled its July 2021 remittitur, and directed the parties to file supplemental briefs addressing

5

*Viking River*'s effect on the issues presented. Both parties timely filed their supplemental briefs.

## DISCUSSION

### I. Governing Law and Standard of Review

#### A. Standard of Review

Where, as here, the trial court's order denying a motion to compel arbitration "rests solely on a decision of law," the "de novo standard of review is employed." (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.)

#### B. PAGA, *Iskanian*, and *Viking River*

PAGA authorizes an "aggrieved employee" to initiate a civil action "on behalf of himself or herself and other current or former employees" to recover civil penalties for violations of the Labor Code ordinarily "assessed and collected by the Labor and Workforce Development Agency[.]" (§ 2699, subd. (a).)

"An employee suing under PAGA 'does so as the proxy or agent of the state's labor law enforcement agencies.' [Citation.] Every PAGA claim is 'a dispute between an employer and the state.' [Citations.] Moreover, the civil penalties a PAGA plaintiff may recover on the state's behalf are distinct from the statutory damages or penalties that may be available to employees suing for individual violations. [Citation.] Relief under PAGA is designed primarily to benefit the general public, not the party bringing the action. [Citations.] 'A PAGA representative action is therefore a type of qui tam action,' conforming to all 'traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation.' [Citation.] The 'government entity on whose behalf the plaintiff files suit is always the real party in

interest.'" (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 81 (*Kim*), italics omitted.)

In *Iskanian*, the California Supreme Court held "an arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA actions in any forum is contrary to public policy." (*Iskanian, supra*, 59 Cal.4th at p. 360.) The United States Supreme Court granted certiorari in *Viking River* to decide whether *Iskanian*'s holding was preempted by the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq. (*Viking River, supra*, 142 S.Ct. at p. 1913.)

The *Viking River* court began its analysis by explaining PAGA claims are "representative" in two ways. (*Viking River, supra*, 142 S.Ct. at p. 1916.) First, "PAGA actions are 'representative' in that they are brought by employees acting as representatives—that is, as agents or proxies—of the State." (*Ibid.*) "In [that] sense, '*every* PAGA action is . . . representative'" and '[t]here is no individual component to a PAGA action,' [citations], because every PAGA claim is asserted in a representative capacity." (*Ibid.*, original italics.) Second, some PAGA actions are "representative" in that they are brought by one employee to recover civil penalties for Labor Code violations committed against other employees. (*Ibid.*)

The *Viking River* court then observed: "*Iskanian*'s principal rule prohibits waivers of 'representative' PAGA claims in the first sense. That is, it prevents parties from waiving *representative standing* to bring PAGA claims in a judicial or arbitral forum. But *Iskanian* also adopted a secondary rule that invalidates agreements to separately arbitrate or litigate 'individual PAGA claims for Labor Code violations that an employee suffered,' on the theory that resolving victim-specific claims in separate

7

arbitrations does not serve the deterrent purpose of PAGA."
(*Viking River*, *supra*, 142 S.Ct. at pp. 1916-1917, original italics.)

The *Viking River* court determined the FAA does not preempt *Iskanian*'s principal rule. (*Viking River*, *supra*, 142 S.Ct. at pp. 1924-1925; see also *id.* at pp. 1919-1923.) In so doing, it noted, among other things: "[T]he FAA does not require courts to enforce contractual waivers of substantive rights and remedies. The FAA's mandate is to enforce '*arbitration agreements*.' [Citation.] And as we have described it, an arbitration agreement is 'a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.' [Citations.] An arbitration agreement thus does not alter or abridge substantive rights; it merely changes how those rights will be processed. And so we have said that "'[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral . . . forum."'" (*Id.* at p. 1919, original italics, fn. omitted.) Thus, the court held "wholesale waiver[s] of PAGA claims[ ]" remain invalid under *Iskanian*. (*Id.* at p. 1924.)

Finally, the *Viking River* court held the FAA preempts *Iskanian*'s secondary rule "preclud[ing] [the] division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." (*Viking River*, *supra*, 142 S.Ct. at p. 1924.) It reasoned *Iskanian*'s "prohibition on contractual division of PAGA actions into constituent claims unduly circumscribes the freedom of parties to determine 'the issues subject to arbitration' and 'the rules by which they will arbitrate,' [citation], and does so in a way that violates the fundamental principle that 'arbitration is a matter of consent,' [citation]." (*Id.* at p. 1923.) Consequently, under *Viking River*, employers may enforce an agreement

mandating arbitration of a plaintiff's individual PAGA claim, even if the agreement does not require arbitration of the plaintiff's non-individual claims. (See *id.* at p. 1925.)

## II. The TSA's PAGA Waiver is invalid and must be severed.

We begin our analysis by addressing whether the PAGA Waiver is enforceable under *Viking River*. We conclude it is not.

As noted above, the PAGA Waiver consists of two clauses. Per the first clause, drivers "agree not to bring a representative action on behalf of others under [PAGA] in any court or in arbitration[.]" (Bolded text omitted.) The second clause states that "for any claim brought on a private attorney general basis— i.e., where [the driver is] seeking to pursue a claim on behalf of a government entity—both [the driver] and [Uber] agree that any such dispute shall be resolved in arbitration on an individual basis only (i.e., to resolve whether [the driver] ha[s] personally been aggrieved or subject to any violations of law), and that such an action may not be used to resolve the claims or rights of other individuals in a single or collective proceeding (i.e., to resolve whether other individuals have been aggrieved or subject to any violations of law)[.]"

The PAGA Waiver does not completely bar Gregg from filing suit under PAGA. The first clause prohibits Gregg from asserting any non-individual PAGA claims against Uber.[2] Its second clause, however, implicitly recognizes he may assert an

---

2      To the extent Gregg reads the first clause of the PAGA Waiver to wholly preclude him from filing *any* lawsuits under PAGA, we reject his interpretation of the PAGA Waiver for the reasons stated in section III, *ante*.

individual PAGA claim. In so doing, the second clause builds upon the first clause. First, it effectively reiterates that Gregg may only bring a "claim . . . on a private attorney general basis" based on "violations of law" he has "personally" suffered. It then requires him to resolve the claim in arbitration and limits the scope of that proceeding. Consequently, when read together, both clauses make clear that Gregg must completely forego his statutory right to seek civil penalties for Labor Code violations committed against other employees, whether in court or in arbitration. The PAGA Waiver therefore requires him to waive his right to invoke "representative standing" to recover penalties based on those violations for the state. (*Viking River*, 142 S.Ct. at p. 1916, italics omitted.) But as noted above, the *Viking River* court made clear ""the FAA does not require courts to enforce contractual waivers of substantive rights and remedies[ ]" (*id.* at p. 1919) and upheld *Iskanian*'s rule "prevent[ing] parties from waiving representative standing to bring PAGA claims in a judicial or arbitral forum." (*Id.* at p. 1916, italics omitted; see also *id.* at pp. 1924-1925.) Because the PAGA Waiver requires Gregg to do that which is still prohibited by *Iskanian*, we conclude it is invalid.[3] (See *id.* pp. 1924-1925.)

Accounting for the PAGA Waiver's potential invalidity, the Arbitration Provision contains the following severance clause: "If any provision of the PAGA Waiver is found to be unenforceable or unlawful for any reason, (1) the unenforceable provision shall be severed from [the TSA]; (2) severance of the unenforceable provision shall have no impact whatsoever on the Arbitration

---

3      In its supplemental brief on remand, Uber does not argue or otherwise suggest any portion of the PAGA Waiver is valid and enforceable under *Iskanian* post-*Viking River*.

10

Provision or the [p]arties' attempt to arbitrate any remaining claims on an individual basis pursuant to the Arbitration Provision; and (3) any representative action brought under PAGA on behalf of others must be litigated in a civil court of competent jurisdiction and not in arbitration." Applying the first part of this provision, we conclude the PAGA Waiver must be severed from the Arbitration Provision (see *Viking River*, *supra*, 142 S.Ct. at p. 1925), and now turn to consider where Gregg must resolve his PAGA claim (i.e., in court or in an arbitral forum) under the Arbitration Provision's remaining terms.

## III. Gregg must arbitrate his individual claim.

Gregg argues that with the PAGA Waiver's severance from the Arbitration Provision, he "cannot be forced to litigate any portion of his PAGA claims in arbitration." In support, he relies on the third part of the severance clause discussed above, which states, "any representative action brought under PAGA on behalf of others must be litigated in a civil court of competent jurisdiction and not in arbitration." He also notes that under section ii of the Arbitration Provision, "[a] representative action brought on behalf of others under [PAGA], to the extent waiver of such a claim is deemed unenforceable by a court of competent jurisdiction[,]" is among the "claims . . . [that] shall not be subject to arbitration[.]" As discussed below, we do not agree with Gregg's argument and conclude he must arbitrate his individual claim.

Gregg misreads the two contractual provisions on which he relies. In his view, these terms require his entire PAGA claim, including its individual and non-individual components, to be litigated in court. Both provisions, however, only apply to a "representative action brought" under PAGA "on behalf of

11

*others*[.]"[4] (Italics added.) They do not state or otherwise suggest they apply to a PAGA action or claim to the extent it is brought on the driver's *own* behalf. And, PAGA expressly permits an "aggrieved employee" to recover civil penalties "through a civil action brought . . . on behalf of himself or herself *and* other current or former employees[.]" (§ 2699, subd. (a), italics added.) We therefore conclude these terms do not exclude Gregg's individual PAGA claim from the Arbitration Provision's scope, nor do they mandate its resolution in court.

We acknowledge that in *Olabi v. Neutron Holdings, Inc.* (2020) 50 Cal.App.5th 1017 (*Olabi*), cited by Gregg, the First District Court of Appeal interpreted similar language differently. There, the plaintiff brought a PAGA claim on behalf of himself and others, asserting the defendant intentionally misclassified its workers as independent contractors and, consequently, violated several Labor Code provisions. (*Id.*, at pp. 1019-1020.) At the time, "California law block[ed] [an] employer from enforcing [an arbitration] agreement with respect to representative PAGA claims for civil penalties[.]" (*Id.* at p. 1019.) Consequently, the defendant petitioned the trial court to compel arbitration of the dispute concerning the plaintiff's classification, and stay the PAGA claim pending completion of arbitration. (*Id.* at p. 1020.) The trial court denied the petition. (*Ibid.*)

On appeal, "[t]he parties dispute[d] whether a representative PAGA claim may be split in th[e] manner[ ]" proposed by the defendant. (*Olabi*, *supra*, 50 Cal.App.5th at p. 1021.) The appellate court, however, determined it "need not

---

4      On two separate occasions in his supplemental brief, Gregg omits the phrase "brought on behalf of others" when setting forth the third part of the Arbitration Provision's severance clause.

decide the issue" because the parties' arbitration agreement "carves out PAGA representative actions[.]" (*Ibid*.) Similar to the language at issue in the TSA's Arbitration Provision, the agreement in *Olabi* stated, in relevant part: "'Neither this Arbitration Provision nor the Class Action Waiver shall apply to a representative action brought on behalf of others under [PAGA]; any representative action brought under PAGA on behalf of others must be litigated in a court of competent jurisdiction.'" (*Ibid*.) Interpreting this provision, the appellate court concluded: "The term 'action' generally means 'suit' and refers to the entire judicial proceeding, from complaint to judgment. (See *Nassif v. Municipal Court* (1989) 214 Cal.App.3d 1294, 1298; Code Civ. Proc., § 22.) Thus, the plain language of the carve out removes a PAGA lawsuit from the 'disputes' otherwise arbitrable under the Arbitration Provision and requires the lawsuit to be litigated in court." (*Olabi*, *supra*, at p. 1021.)

We decline to follow *Olabi* for a few reasons. As an initial matter, the opinion was filed before *Viking River* was decided. (See *Olabi*, *supra*, 50 Cal.App.5th 1017; *Viking River*, *supra*, 142 S.Ct. 1906.) Therefore, the *Olabi* court did not interpret the agreement before it in the context of current law, which, as discussed above, now permits a PAGA lawsuit to be split into arbitrable and non-arbitrable components, and does not require it to be treated as an indivisible unit for purposes of arbitration.

Further, in interpreting the agreement, the *Olabi* court focused entirely on the meaning of the word "action" in the relevant contractual provision, but relied exclusively on legal authorities defining what it "generally means[.]" (See *Olabi*, *supra*, 50 Cal.App.5th at p. 1021.) In so doing, however, it is unclear whether the court interpreted the PAGA carve out clause

13

with the goal of ascertaining the parties' intentions behind the language at issue. (See *State of California v. Continental Ins. Co.* (2012) 55 Cal.4th 186, 195 ["'The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties.' [Citations.] 'Such intent is to be inferred, if possible, solely from the written provisions of the contract'"].) Indeed, it is unclear what principles of contract interpretation, if any, were applied. (See *Rice v. Downs* (2016) 248 Cal.App.4th 175, 185 ["The ordinary rules of contract interpretation apply to arbitration agreements"].)

Applying those rules of interpretation here, we conclude that by specifying their application to a "representative action" under PAGA "brought on behalf of *others*" (italics added), Uber did not intend section ii of the Arbitration Provision or the third portion of the severance clause to apply to the portion of a PAGA lawsuit brought on behalf of Gregg *himself*. (See *Cundall v. Mitchell-Clyde* (2020) 51 Cal.App.5th 571, 584, fn. 9 [describing "the principle of interpretation" known as *expressio unius est exclusio alterius*, under which "an author's choice to specify one thing tends to exclude others"].) To interpret the language at issue to mean an entire PAGA lawsuit, including both its individual and non-individual components, would render the phrase "brought on behalf of others" surplusage. (See *Rice v. Downs*, *supra*, 248 Cal.App.4th at p. 186 ["An interpretation that leaves part of a contract as surplusage is to be avoided"].)

Having concluded Gregg misinterprets the contractual terms on which he relies, we note he also overlooks two other provisions establishing that he must arbitrate his individual PAGA claim. First, as discussed above, the Arbitration Provision states it applies to "disputes arising out of or related to [Gregg's]

14

relationship with [Uber], including termination of the relationship." It "also applies, without limitation, to disputes regarding any city, county, state or federal wage-hour law, . . . compensation, breaks and rest periods, . . . [and] termination[.]" Based on this language, Gregg's individual PAGA claim falls squarely within the Arbitration Provision's scope. The claim is based on Uber's alleged misclassification of him as an independent contractor (i.e., a "dispute[ ] arising out of or related to [Gregg's] relationship with Uber[ ]") and, as a result thereof, Uber's alleged violations of the provisions in the Labor Code and the IWC Wage Order requiring it to, among other things, provide him with compliant meal and rest periods; pay him minimum, regular, and overtime wages; maintain accurate records for him; provide him with accurate itemized wage statements; and timely pay him wages due during, and upon termination of, employment (i.e., "disputes regarding . . . state . . . wage-hour law, . . . compensation, breaks and rest periods, . . . [and] termination").

Second, while fixating on the third part of the severance clause, Gregg ignores the second part, which clarifies the PAGA Waiver's severance from the TSA does not affect the Arbitration Provision's application to his individual claim. On this point, the severance clause states: "severance of the unenforceable provision [of the PAGA Waiver] shall have no impact whatsoever on the Arbitration Provision or the [p]arties' attempt to arbitrate any remaining claims on an individual basis pursuant to the Arbitration Provision[.]"

In sum, pursuant to section i of the Arbitration Provision and the second part of the PAGA Waiver's severance clause, Gregg must resolve his individual PAGA claim in arbitration. Per section ii of the Arbitration Provision and the third part of the

15

PAGA Waiver's severance clause, however, his non-individual claims are not subject to arbitration and must be litigated in court. We now turn to consider whether his non-individual claims should be dismissed or stayed pending completion of arbitration.

## IV. Gregg's non-individual claims must be stayed pending completion of arbitration.

After holding the plaintiff in *Viking River* was required to arbitrate her individual PAGA claim, the United States Supreme Court determined her non-individual claims must be dismissed. (*Viking River*, *supra*, 142 S.Ct. at p. 1925.) In so doing, the court reasoned: "[A]s we see it, PAGA provides no mechanism to enable a court to adjudicate nonindividual PAGA claims once an individual claim has been committed to a separate proceeding. Under PAGA's standing requirement, a plaintiff can maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action. [Citations.] When an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit. [Citation.] As a result, [the plaintiff] lacks statutory standing to continue to maintain her non-individual claims in court, and the correct course is to dismiss her remaining claims." (*Ibid*.)

Uber contends the *Viking River* court "got PAGA's standing requirements exactly right[,]" and therefore argues Gregg's non-individual claims should be dismissed. In response, Gregg asserts: (1) this court "is not obligated to follow federal decisions interpreting state law[ ]"; and (2) under the "ample guidance" provided by the California Supreme Court on "the scope of PAGA standing," he does not lose statutory standing to maintain his non-individual PAGA claims in court simply because he must

arbitrate his individual claim. As discussed below, we agree with Gregg.

Preliminarily, we note that we are not bound by the United States Supreme Court's interpretation of PAGA and its standing requirements. (See *Howard Contracting, Inc. v. G.A. MacDonald Construction Co.* (1998) 71 Cal.App.4th 38, 52 ["[F]ederal decisional authority is neither binding nor controlling in matters involving state law"]; see also *Haynes v. EMC Mortgage Corp.* (2012) 205 Cal.App.4th 329, 335 ["We, of course, are not bound by federal decisions on matters of state law"].) Indeed, in her concurrence in *Viking River*, Justice Sotomayor correctly recognized "California courts . . . will have the last word[ ]" on whether a plaintiff retains statutory standing to assert non-individual claims in court when his or her individual claim has been sent to arbitration.[5] (*Viking River, supra,* 142 S.Ct. at p. 1925 (conc. opn. of Sotomayor, J.).)

Accordingly, we begin our independent analysis of the standing issue with the relevant statutory text. As noted above, PAGA authorizes an "aggrieved employee" to recover civil penalties for violations of the Labor Code ordinarily "assessed and collected by the Labor and Workforce Development Agency." (§ 2699, subd. (a).) "For purposes of [PAGA], 'aggrieved employee' means any person who was employed by the alleged violator and

---

5      In *Adolph v. Uber Technologies*, review granted July 20, 2022, S274671, the California Supreme Court will consider "[w]hether an aggrieved employee who has been compelled to arbitrate claims under [PAGA] that are 'premised on Labor Code violations actually sustained by' the aggrieved employee [citations] maintains statutory standing to pursue 'PAGA claims arising out of events involving other employees' [citation] in court or in any other forum the parties agree is suitable."

17

against whom one or more of the alleged violations was committed." (§ 2699, subd. (c).)

In *Kim*, *supra*, 9 Cal.5th 73, the California Supreme Court clarified the statutory requirements a plaintiff must satisfy to have standing to recover civil penalties under PAGA. (See *id.* at pp. 83-84.) It stated: "The plain language of section 2699(c) has only two requirements for PAGA standing. The plaintiff must be an aggrieved employee, that is, someone 'who was employed by the alleged violator' and 'against whom one or more of the alleged violations was committed.'" (*Ibid.*)

Applying the two-part test above, the *Kim* court concluded plaintiffs who "settle and dismiss their individual claims for Labor Code violations[ ]" do not "lose standing to pursue a claim under [PAGA]." (*Kim*, *supra*, 9 Cal.5th at p. 80; see also *id.* at pp. 84-85.) The court determined the plaintiff had "standing to pursue penalties on the state's behalf[ ]" under PAGA because he "was employed by [the defendant] and alleged that he personally suffered at least one Labor Code violation on which the PAGA claim is based." (*Id.* at p. 84.) The court then rejected the defendant's contention the plaintiff "is no longer an 'aggrieved employee' because he accepted compensation for his injury." (*Ibid.*) It explained: "[The plaintiff] became an aggrieved employee, and had PAGA standing, when one or more Labor Code violations were committed against him. [Citation.] Settlement did not nullify these violations." (*Ibid.*)

In addition to *Kim*, *Johnson v. Maxim Healthcare Services, Inc.* (2021) 66 Cal.App.5th 924 (*Johnson*) is instructive. There, the plaintiff asserted a PAGA claim against her former employer on behalf of herself and other employees based on the employer's inclusion of an illegal non-compete clause in an agreement they

18

had signed. (*Id.* at p. 927.) The defendant demurred to the complaint, arguing the plaintiff's individual claim was time-barred because she signed her agreement three years before filing suit. (*Ibid.*) In opposition, the plaintiff argued "she had standing to bring a claim under PAGA because she was an aggrieved employee and had exhausted the necessary administrative remedies." (*Ibid.*) The trial court sustained the demurrer without leave to amend, reasoning that because the plaintiff's claim was time-barred, she lacked standing to assert a PAGA claim on behalf of other employees. (*Ibid.*)

The Court of Appeal reversed, explaining: "Under *Kim*, we conclude [the plaintiff] is an 'aggrieved employee' with standing to pursue her PAGA claim. [She] alleged she is employed by [the defendant] and that she personally suffered at least one Labor Code violation on which the PAGA claim is based. [Citations.] The fact that [her] individual claim may be time-barred does not nullify the alleged Labor Code violations nor strip [the plaintiff] of her standing to pursue PAGA remedies." (*Johnson, supra*, 66 Cal.App.5th at p. 930; see also *id.* at p. 932.) Further, the court rejected the defendant's attempt to limit *Kim*'s application to its facts. (*Id.* at p. 930.) In so doing, it explained: "The rule from *Kim* is an 'aggrieved employee' has standing to pursue a PAGA claim, irrespective of whether that employee maintains a separate Labor Code claim. And . . . [the plaintiff] alleged she was an aggrieved employee. Under *Kim*, this allegation is sufficient, at this stage, to establish standing." (*Ibid.*)

Applying *Kim*'s two-part test, we conclude that, at this stage of the proceedings, Gregg has established standing to recover civil penalties for Labor Code violations committed against other employees. His operative complaint alleges he was

employed by Uber, that he has sustained "one or more" of the Labor Code violations underlying his claim, and that he "seeks to recover civil penalties on behalf of himself and other current and former Uber drivers for [Uber's] violations of the Labor Code[.]" His agreement to arbitrate his individual claim does not nullify these allegations. (See *Kim*, *supra*, 9 Cal.5th at p. 84; see also *Johnson*, *supra*, 66 Cal.App.5th at p. 930.) It merely requires him to litigate a portion of his PAGA claim in an alternative forum governed by different procedures. (See *Viking River*, *supra*, 142 S.Ct. at p. 1919 ["An arbitration agreement . . . does not alter or abridge substantive rights; it merely changes how those rights will be processed"].) And, so far as we can tell, PAGA does not require a plaintiff to resolve certain portions of his or her PAGA claim in a judicial—as opposed to an arbitral—forum in order to seek civil penalties based on Labor Code violations committed against other employees in court. "In construing a statute, we are "'careful not to add requirements to those already supplied by the Legislature.'"'" (*Kim*, *supra*, at p. 85.)

Accordingly, we hold that under California law, an alleged "aggrieved employee" (§ 2699, subd. (c)) is not stripped of standing to assert non-individual PAGA claims in court simply because he or she has been compelled to arbitrate his or her individual PAGA claim. (See *Kim*, *supra*, 9 Cal.5th at pp. 83-85; see also *Johnson*, *supra*, 66 Cal.App.5th at p. 930; *Rocha v. U-Haul Co. of California* (2023) 88 Cal.App.5th 65, 77 (*Rocha*) ["[U]nless and until there is a finding on the merits regarding the alleged violation, allegations of a Labor Code violation by an alleged employee or former employee are alone sufficient to establish PAGA standing"].)

In arriving at our conclusion, we note the legislative history and the California appellate court decisions[6] cited by Uber do not—as it suggests—establish Gregg no longer meets PAGA's standing requirements. These authorities, along with the two cases discussed above, make clear that to recover civil penalties under PAGA on behalf of other employees, the plaintiff must: (1) have been employed by the defendant; (2) have suffered one or more of the Labor Code violations on which the PAGA claim is based; and (3) seek to recover penalties for the violations he or she suffered in addition to penalties for violations suffered by other employees. (See *Kim, supra*, 9 Cal.5th at p. 90 [discussing Legislature's inclusion of section 2699, subdivision (c) to dissuade "'shakedown' suits" and "ensure that PAGA suits could not be brought by 'persons who suffered no harm from the alleged wrongful act'"]; *Tanguilig v. Bloomingdale's, Inc.* (2016) 5 Cal.App.5th 665, 678, [noting a PAGA plaintiff may "su[e] solely on behalf of himself or herself or also on behalf of other employees"]; *Amalgamated Transit Union, Local 1756 AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1004-1005 [labor unions lacked PAGA standing because they "were not employees of defendants" and therefore "cannot satisfy the express . . . requirements" of section 2699, subdivision (c)]; *Robinson v. Southern Counties Oil Co.* (2020) 53 Cal.App.5th 476, 483-485 [employee lacked standing to assert a PAGA claim based entirely on Labor Code violations occurring after his termination].) They do not establish that a plaintiff who—like Gregg—allegedly satisfies these requirements, but has been compelled to resolve

---

6       Uber also cites two federal district court decisions, which are not binding upon this court. (See *Haynes v. EMC Mortgage Corp., supra*, 205 Cal.App.4th at p. 335].)

his or her individual claim in an arbitral forum, loses standing to pursue non-individual claims in court.

In addition, we note Uber also contends Gregg lacks standing to assert non-individual claims in court because: "The FAA demands that his individual PAGA claim be severed from his non-individual claims [citation], and thus what was once 'a single action' must now proceed as 'two . . . separate and distinct actions with consequent separate [j]udgments' [citations]." In support of this argument, Uber cites *Viking River*, *Bodine v. Superior Court of Santa Barbara County* (1962) 209 Cal.App.2d 354 (*Bodine*), and *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725 (*Morehart*).

We reject this contention because it is unsupported by the authority on which Uber relies. In *Viking River,* the United States Supreme Court did not—as Uber asserts—hold that under the FAA, Gregg's individual claim must be "severed" from his nonindividual claims. Rather, the court interpreted "PAGA's standing requirement" to provide that "a plaintiff can maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action[,]" and therefore concluded that "[w]hen an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit." (*Viking River*, *supra*, 142 S.Ct. at p. 1925.) However, as discussed above, and as Justice Sotomayor acknowledged, we are not bound by the *Viking River* court's "understanding of state law[.]" (*Ibid.* (conc. opn. of Sotomayor, J.).)

*Bodine* and *Morehart* simply do not apply here. In *Bodine*, the appellate court considered whether the trial court erred by

22

agreeing to empanel a jury in the second half of a hearing on a probate petition for determining heirship, when the executor of the estate and the heirs who initially appeared at the hearing previously stipulated to proceed without a jury. (See *Bodine, supra*, 209 Cal.App.2d at pp. 356-359.) In *Morehart*, our Supreme Court addressed: (1) whether an appeal can be taken from a judgment that does not completely dispose of all the pending causes of action, even if the judgment was entered on certain causes of action previously severed from the others; and (2) whether a zoning ordinance amended by the County of Santa Barbara and its board of supervisors was preempted by state law. (*Morehart, supra*, 7 Cal.4th at p. 732.) Although each decision noted severance of a civil action results in two or more separate cases with distinct judgments (*Bodine, supra*, at p. 361; *Morehart, supra*, at p. 739, fn. 7), in neither case did the appellate court apply this principle in a manner to suggest, let alone hold, that a plaintiff loses standing to assert non-individual claims under PAGA once he or she is compelled to arbitrate his or her individual claim. (See *Bodine, supra*, at pp. 356-359; *Morehart, supra*, at pp. 731-732.)

Finally, we consider Uber's contention that Gregg's non-individual claims should be dismissed because "[a]ny other outcome would be unworkable." Specifically, it argues that unless Gregg's non-individual claims are dismissed, he will be "permitted to" litigate the issue whether he is an "aggrieved employee" under 2699, subdivision (c) in court to show he has standing to pursue civil penalties based on Labor Code violations suffered by other employees, even though he has agreed to resolve that issue exclusively in arbitration.

We are not persuaded by this argument for two reasons. First, it appears to assume that, absent dismissal, Gregg's non-individual claims will move forward in court while his individual claim is pending in arbitration, and therefore he will be required to litigate the issue whether he is an "aggrieved employee" under section 2699, subdivision (c) simultaneously in both forums. This assumption, however, is wholly unsupported by any explanation grounded in law or fact.

Second, Uber appears to assume that even if Gregg's non-individual claims are stayed pending completion of arbitration on his individual claim, he will be allowed to relitigate whether he is an "aggrieved employee" in court because the doctrine of issue preclusion will not apply to the arbitrator's finding on the issue. This assumption is premature at best, and incorrect at worst. A split in authority has recently developed on this issue (compare *Rocha, supra,* 88 Cal.App.5th at pp. 78-82 with *Gavriiloglou v. Prime Healthcare Management, Inc.* (2022) 83 Cal.App.5th 595, 602-607), and the parties have not asked to brief it. In any event, we express no opinion on the matter and need not address it. As discussed above, *Kim* and *Johnson* establish that regardless of its resolution, Gregg has not lost standing to assert his non-individual claims in court merely because he has agreed to arbitrate his individual claim.

Having concluded Gregg's non-individual claims are not subject to dismissal at this time, we agree with the parties that under the Arbitration Provision, they should be stayed pending completion of arbitration on his individual claim. On this point, the Arbitration Provision states: "To the extent that there are any claims to be litigated in a civil court of competent jurisdiction because a civil court of competent jurisdiction determines that

the PAGA Waiver is unenforceable with respect to those claims, the [p]arties agree that litigation of those claims shall be stayed pending the outcome of any individual claims in arbitration."

## DISPOSITION

The order denying the motion to compel arbitration is affirmed in part and reversed in part. Specifically, the order is affirmed with respect to Gregg's non-individual claims, and reversed with respect to his individual claim. The case is remanded to the trial court with directions to: (1) enter an order compelling Gregg to arbitrate his individual claim; and (2) stay his non-individual claims until completion of arbitration.

In the interests of justice, each party shall bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

## CERTIFIED FOR PUBLICATION

CURREY, Acting P. J.

We concur:

COLLINS, J.

STONE, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.

26