[No. A106879. First Dist., Div. Two. Aug. 31, 2005.]

EVA ROBERTSON, Plaintiff and Respondent, v.
HEALTH NET OF CALIFORNIA, INC., et al., Defendants and Appellants.

COUNSEL

Morgan, Lewis & Bockius, William J. Taylor, Diane L. Webb; Greines, Martin, Stein & Richland, Robert A. Olson and Cynthia E. Tobisman for Defendants and Appellants.

Pillsbury & Levinson, Arnold R. Levinson and Terrence J. Coleman for Plaintiff and Respondent.

OPINION

**RUVOLO, J.—**

## I.

### INTRODUCTION

Health Net of California, Inc. and Health Net, Inc. (collectively Health Net) appeal from an order denying their motion to compel arbitration of a complaint brought against them by Eva Robertson (Robertson), a Health Net plan subscriber. We conclude the trial court correctly denied the motion finding that Health Net failed to comply with Health and Safety Code[1] section 1363.1, which requires arbitration clauses in health care plans to be "prominently displayed," and to be placed "immediately before the signature line provided" for the subscriber's signature on the enrollment form. (§ 1363.1, subds. (b) & (d).) Accordingly, we affirm the court's order.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

Health Net issued a health services agreement to the Bay Area Chamber of Commerce effective January 2003. This coverage was made available to members of various Bay Area chambers of commerce, including the Danville Chamber of Commerce, to which Robertson belonged. On November 1, 2003, Robertson enrolled in the plan. However, shortly after enrolling Robertson received a memorandum from the chamber indicating that her health plan was being cancelled.

In response to the cancellation, Robertson filed a lawsuit against Health Net claiming breach of contract, breach of the covenant of good faith and fair

---

[1] All statutory references are to the Health and Safety Code unless otherwise specified.

dealing, fraud, unfair competition, and violation of the Consumer Legal Remedies Act (Civ. Code, § 1780 et seq.).[2] Before answering Robertson's complaint, Health Net filed a motion to compel arbitration. According to Health Net, Robertson agreed to binding arbitration as the sole method for resolving any disputes between herself and the health plan provider.

To support its motion, Health Net attached a copy of Robertson's enrollment form, which included the claimed arbitration agreement.[3] The agreement is located on the second page of the enrollment form and is contained within a section entitled "ACCEPTANCE OF COVERAGE." It is the third paragraph within that section, and is only separated from the other paragraphs by a bolded subheading entitled "Arbitration Agreement" and an extra space added before and after the first and last sentences. Other than the subheading, the entire agreement is printed in the same font and size as every other paragraph of that section.

Additionally, three other paragraphs follow the text of the arbitration agreement on the enrollment form. The first consists of a notice concerning California's prohibition against requiring HIV testing as a condition of obtaining insurance. The second is an advisement concerning the penalties for presentation of fraudulent claims. The last paragraph, located directly before the signature line, informs the enrollee that by signing the form he or she acknowledges having read and understood all of the plan's agreements, including the binding arbitration agreement.[4] A copy of the second page of a blank Health Net enrollment form is attached to this opinion as appendix A.

Robertson opposed the motion to compel arbitration, claiming that Health Net's agreement was unenforceable because it (1) did not comply with section 1363.1; (2) was unconscionable; and (3) unlawfully required Robertson to submit certain statutory claims to arbitration.

[2] Robertson also filed a request for a preliminary injunction in order to stop Health Net from canceling her coverage. The motion was granted, but the injunction was eventually dissolved based on a mutual stipulation of the parties that in light of Robertson's obtainment of alternative coverage the injunction was no longer needed.

[3] The arbitration agreement located on Robertson's enrollment form provides: **"Arbitration Agreement**: I understand that any dispute or controversy, except medical malpractice, that may arise regarding the performance, interpretation or breach of the agreement between myself (and / or any enrolled family member) and Health Net, Health Net Life Insurance Company or any participating Medical Group / Independent Physicians Association, whether arising in contract, tort, or otherwise, must be submitted to arbitration in lieu of a jury or court trial."

[4] The full text of the last provision appearing before the signature line provides: "Please sign and date this application below. Your signature indicates that you have completed all requested information as accurately as possible and that you have read the Plan information and understand all agreements, including your agreement to submit disputes to binding arbitration."

On June 3, 2004, the San Francisco County Superior Court issued an order denying Health Net's motion to compel arbitration. The trial court ruled that Health Net's arbitration clause was unenforceable because it failed to meet two of the mandatory display requirements set forth in section 1363.1.[5] First, the agreement failed to comply with section 1363.1, subdivision (d), which requires a health plan to display its arbitration agreement "immediately before" the signature line provided for the enrollee on the enrollment form. In this regard, the court noted: "And it is true that the disclosure is before the signature line but it's not immediately before the signature line, it's close."

Second, the court held that Health Net did not comply with section 1363.1, subdivision (b), which requires a health plan to prominently display its arbitration agreement on the plan enrollment form. The court found that Health Net's arbitration agreement did not stand out: "The disclosure is not prominently displayed. You can hardly read it. It's there, I concede that but it's in the same type, same everything. It simply runs with all the other boilerplate there." Later during the hearing, the court observed that the agreement was simply one part of an "unending flow of typography": "[T]he arbitration agreement is simply part of an unending flow of typography. It doesn't stand out. In fact, one way to do it is just give that to somebody at a slight distance where they can't quite read it and say which part is sticking out. You can't. Virtually, it's undistinguishable."

It is from this order that Health Net filed a timely notice of appeal.

---

[5] Section 1363.1 provides:

"Any health care service plan that includes terms that require binding arbitration to settle disputes and that restrict, or provide for a waiver of, the right to a jury trial shall include, in clear and understandable language, a disclosure that meets all of the following conditions:

"(a) The disclosure shall clearly state whether the plan uses binding arbitration to settle disputes, including specifically whether the plan uses binding arbitration to settle claims of medical malpractice.

"(b) The disclosure shall appear as a separate article in the agreement issued to the employer group or individual subscriber and shall be prominently displayed on the enrollment form signed by each subscriber or enrollee.

"(c) The disclosure shall clearly state whether the subscriber or enrollee is waiving his or her right to a jury trial for medical malpractice, other disputes relating to the delivery of service under the plan, or both, and shall be substantially expressed in the wording provided in subdivision (a) of Section 1295 of the Code of Civil Procedure.

"(d) In any contract or enrollment agreement for a health care service plan, the disclosure required by this section shall be displayed immediately before the signature line provided for the representative of the group contracting with a health care service plan and immediately before the signature line provided for the individual enrolling in the health care service plan."

# III.

## DISCUSSION

█ There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. (*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 71–72 [100 Cal.Rptr.2d 683] (*NORCAL*).) If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. (See, e.g., *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416 [100 Cal.Rptr.2d 818] [finding substantial evidence that parties had in fact reached agreement to arbitrate and thus court order compelling arbitration was affirmed]; see also *Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653 [35 Cal.Rptr.2d 800].) Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. (See, e.g., *NORCAL, supra*, at pp. 71–72 [ordering parties to arbitrate after independently coming to legal conclusion that parties' dispute was covered by arbitration agreement]; see also *Metalclad Corp. v. Ventana Environmental Organization Partnership* (2003) 109 Cal.App.4th 1705, 1716 [1 Cal.Rptr.3d 328].) In this case, the denial was based solely on the court's conclusion that Health Net's arbitration agreement failed to comply with two of the mandatory display requirements of section 1363.1 and was thus unenforceable.

█ Accordingly, we review the superior court's order de novo. (See *Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 484 [17 Cal.Rptr.3d 88].) It is well settled that the interpretation and application of a statutory scheme presents a pure question of law and is subject to independent review by the courts of appeal. (*City of San Diego v. Dunkl* (2001) 86 Cal.App.4th 384, 395 [103 Cal.Rptr.2d 269].) Under this standard, we undertake our own interpretation of the determinative statute and assess any claims raised by the parties completely anew.

## A.

### Interpretation of Section 1363.1, Subdivision (d)

█ When interpreting the meaning of a statute our primary goal is to determine and effectuate the Legislature's intent. (*In re Marriage of Bonds* (2000) 24 Cal.4th 1, 15 [99 Cal.Rptr.2d 252, 5 P.3d 815]; 58 Cal.Jur.3d (2004) Statutes, § 91, p. 482.) To ascertain this intent we look first to the words used in the statute, giving them their usual and ordinary meaning. (*Trope v. Katz* (1995) 11 Cal.4th 274, 280 [45 Cal.Rptr.2d 241, 902 P.2d 259]; *In re Marriage of Hobdy* (2004) 123 Cal.App.4th 360, 366 [20 Cal.Rptr.3d 104] ["Under the so-called 'plain meaning' rule, courts seek to give the words

employed by the Legislature their usual and ordinary meaning."].) We do so because the Legislature is presumed to have meant exactly what it said. (*In re Dannenberg* (2005) 34 Cal.4th 1061, 1081 [23 Cal.Rptr.3d 417, 104 P.3d 783].) Only when the words of a statute are inherently ambiguous or there appears to be some other reason to depart from the plain meaning rule (i.e., when using the plain meaning rule would lead to absurd results) will we look to other indicia of legislative intent. (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 978 [90 Cal.Rptr.2d 260, 987 P.2d 727]; 58 Cal.Jur.3d, *supra*, Statutes, §§ 90–95, 114, 140–148 at pp. 480–488, 519, 564–574; see also 2A Singer, Statutes and Statutory Construction (6th ed. 2000 rev.) Literal Interpretation, § 46:01, at pp. 126–127.)

■ Section 1363.1, subdivision (d) directs a health plan to place its arbitration agreement "immediately before the signature line provided for the individual enrolling in the health care service plan." It is hard to imagine that the Legislature's directive to health care plan providers could have been clearer. In plain and ordinary language, "immediately before" means that the arbitration agreement must be typed in directly before the signature line provided for the individual on the enrollment form *without any intervening language.*

This plain meaning interpretation is consistent with the most authoritative and recognized published English language dictionaries. For example, the venerable Oxford English Dictionary defines "immediately" as "[w]ithout intermediary, intervening agency, or medium; by direct agency; in direct or proximate connexion or relation; so as to concern, interest, or affect directly, or intimately; directly." (<http://dictionary.oed.com/cgi/entry/50112443? single=1&query_type=word&queryword=immediately&first=1&max _to_show=10/> [as of Aug. 30, 2005].) Furthermore, the American Heritage Dictionary ((3d college ed. 1993) p. 679), the dictionary commonly issued to members of this court, defines it as "1. Without delay. 2. With no intermediary; directly." Not surprisingly, several other well-known dictionaries provide almost the exact same definition. (Merriam-Webster Online, <http://www.m-w.com/cgi-bin/dictionary> [as of Aug. 31, 2005]; see *ibid.* [defining "immediate" as "acting or being without the intervention of another object, cause, or agency: direct"]; Black's Law Dict. (8th ed. 2004) p. 764, col. 2; see *ibid.* ["[n]ot separated by other persons or things." Also indicating that another common definition of immediate is "[h]aving a direct impact without an intervening agency"].)

Nevertheless, Health Net argues that we should interpret section 1363.1, subdivision (d) to mean that a health plan's arbitration agreement must only be displayed *"close by"* the enrollee signature line. (Italics in original.) According to Health Net, it has complied with this requirement given the fact that only five sentences separate its arbitration agreement and enrollee signature line. For support, Health Net cites two Internet "dictionaries" which define "immediately" as "close by," including Princeton University's Cognitive Science Laboratory "on-line lexical database," WordNet, (<http://wordnet.princeton.edu/> [as of Aug. 31, 2005]),[6] and the Cambridge Advanced Learner's Dictionary (<http://dictionary.cambridge.org/> [as of Aug. 31, 2005]).

■ We find Health Net's argument unpersuasive. First, we disagree that "immediately" means "close by." To the extent it is, "close by" is, at best, a seldom-used definition of "immediately." In fact, the only authority for defining "immediately" as "close by" appears to be the two dictionaries cited in Health Net's brief. On that basis we are not inclined to contravene the cardinal rule of statutory interpretation that courts should not give the words of a statute a strained or seldom-used meaning. (See, e.g., *Rosemary Properties, Inc. v. McColgan* (1947) 29 Cal.2d 677, 685 [177 P.2d 757]; *Gayer v. Whelan* (1943) 59 Cal.App.2d 255, 262 [138 P.2d 763]; 2A Singer, Statutes and Statutory Construction, *supra*, § 47:28, pp. 344–358.)

■ A similar conclusion was reached in *Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44 [16 Cal.Rptr.3d 687] (*Malek*). In that case, the health plan arbitration clause was printed near the end of the enrollment form, but not directly above the place provided for the enrollees' signatures. Instead, between the clause and the signature line was another paragraph authorizing the release of medical information. The appellate court concluded that "[t]he juxtaposition of the arbitration provision does not satisfy the statute's placement requirement." (*Id.* at p. 62.) Further, as noted in *Malek*, the failure of the health care plan contract to comply with section 1363.1 renders the arbitration clause unenforceable. (*Malek*, *supra*, 121 Cal.App.4th at pp. 62–63, citing *Imbler v. PacifiCare of Cal., Inc.* (2002) 103 Cal.App.4th 567, 577–579 [126 Cal.Rptr.2d 715].)

---

[6] The WordNet database is described on the laboratory's Web site as "an online lexical reference system whose design is inspired by current psycholinguistic theories of human lexical memory. English nouns, verbs, adjectives and adverbs are organized into synonym sets, each representing one underlying lexical concept. Different relations link the synonym sets." (<http://wordnet.princeton.edu/>.)

Perhaps recognizing the infirmity of its principal position, Health Net alternatively argues that, in fact, its enrollment form does comply with section 1363.1, subdivision (d) because there is a reference to the arbitration clause in the last sentence appearing "immediately" above the signature line. We quoted this passage in full in footnote 4 of this opinion. However, we disagree with Health Net that the general reference in that paragraph to "understand all agreements, including your agreement to submit disputes to binding arbitration" constitutes compliance with section 1363.1, subdivision (d).

■ Nothing in the language of the statute indicates that a mere reference to the arbitration agreement could satisfy the requirements of section 1363.1, subsection (d). Instead, the disclosure required to be "immediately before the signature line" must itself include the following information: "(a) The disclosure shall clearly state whether the plan uses binding arbitration to settle disputes, including specifically whether the plan uses binding arbitration to settle claims of medical malpractice." (§ 1363.1, subd. (a).) Additionally, the disclosure must include whether the waiver encompasses the subscriber's right to a jury trial for medical malpractice, "other disputes relating to the delivery of service under the plan, or both . . . ." (§ 1363, subd. (c).) Thus, the statute is clear that the agreement itself must appear immediately before the signature line. (§ 1363.1, subd. (d).)

Therefore, a mere reference to "submit[ting] disputes to binding arbitration" does not meet the more specific demands of the statute. Adherence to the strict requirements of the statute is mandated, otherwise the agreement will not be enforced. (*Malek, supra,* 121 Cal.App.4th at pp. 62–64.)

## B.

### Interpretation of Section 1363.1, Subdivision (b)

Appellant also argues that its arbitration clause meets the "prominently displayed" requirement of section 1363.1, subdivision (b). Under Health Net's reading of the statute, prominently displayed only means that the arbitration agreement must stand out and be readily noticeable on the plan enrollment form. Health Net contends that its separated and bolded arbitration clause fulfills this requirement.

Factually, we must first observe that the arbitration clause itself is not highlighted or bolded. Only the title of that clause is bolded, and says simply "**Arbitration Agreement.**" However, both the bolded title, as well as the text of the disclosure itself, are printed in the same typeface as that used in the rest of the enrollment form.

■ The *Imbler* court disposed of a similar argument raised by the health care plan provider in that case. There, the contested clause was set forth in the middle of a paragraph which included reference to several subjects. The clause was neither highlighted nor printed in typeface that in any way distinguished it from the type in the rest of the agreement. With regard to the "prominence" question, the court explained: " 'Prominent' is defined as 'standing out or projecting beyond a surface or line,' or 'readily noticeable.' Here, the disclosure sentence was written in the middle of the authorization for the release of medical records and an authorization for payroll deduction of premiums. The disclosure was in the same font as the rest of the paragraph, and was not bolded, underlined or italicized. The disclosure sentence neither stood out nor was readily noticeable. We simply fail to see how this disclosure can be deemed as being 'prominently displayed.' Because the arbitration disclosure fails to comply with section 1363.1, subdivision (b), we hold that the trial court properly denied PacifiCare's petition to compel arbitration." (*Imbler v. PacifiCare of Cal., Inc., supra,* 103 Cal.App.4th at p. 579, fn. omitted.)

Similarly, the trial judge observed that Health Net's arbitration agreement does not "stand out" or "stick[] out" from the rest of the text on the page as to which it was "[v]irtually . . . indistinguishable." We agree. While the disclosure here is somewhat more arresting than that in *Imbler* in that Health Net's paragraph is, at least, separately stated and its title is in bold print, it is still not prominent as described in *Imbler,* and as is required by the statute. Given the facts that: (1) the provision is some distance from the enrollees' signature line, (2) the provision is printed in the same font or typeface as the rest of the form, and (3) only the title is in bolded type, we conclude that the arbitration clause also fails to meet the mandatory "prominen[ce]" requirement of section 1363.1, subdivision (b), and is unenforceable for this additional reason.

## C.

### Substantial Compliance with Section 1363.1

As an alternative, Health Net argues that it has substantially complied with the essential purpose of the statute, and thus its literal noncompliance with section 1363.1 should not invalidate the arbitration agreement. According to Health Net, any argument that Robertson did not knowingly waive her right to a jury trial is foreclosed by the close proximity between Health Net's arbitration clause and enrollee signature line, its prominent display of the agreement on the enrollment form, and the reference to its agreement located in the last line. Consequently, the arbitration clause must be enforced.

■ In response, Robertson contends the doctrine of substantial compliance does not apply in this case. To determine if the doctrine applies, Robertson contends, the court must decide whether subsections (b) and (d) are mandatory. (See *D'Agostino v. Superior Court* (1995) 33 Cal.App.4th 107, 117 [39 Cal.Rptr.2d 112] [indicating that application of substantial compliance doctrine should be determined in light of whether statute is mandatory or directory]; 3 Singer, Statutes and Statutory Construction (6th ed. 2001 rev.) Mandatory and Directory Construction, § 57:26, pp. 78–79.) A mandatory section is one that is essential to the promotion of the overall statutory design and thus does not permit substantial compliance. (*Cal-Air Conditioning, Inc. v. Auburn Union School Dist.* (1993) 21 Cal.App.4th 655, 673 [26 Cal.Rptr.2d 703] (*Cal-Air*).) According to Robertson, section 1363.1 meets this test because the failure to comply with its provisions casts serious doubt as to whether the essential purpose of the statute, the knowing waiver of the jury trial right, was fulfilled. Thus, the doctrine of substantial compliance should not apply, and only literal compliance should be accepted.

■ The rules governing the doctrine of substantial compliance are well settled. (See *Cal-Air, supra,* 21 Cal.App.4th at p. 668.) As it is used in the decisions of this state, the doctrine excuses literal noncompliance only when there has been "actual compliance in respect to the substance essential to every reasonable objective of the statute." (*Stasher v. Harger-Haldeman* (1962) 58 Cal.2d 23, 29 [22 Cal.Rptr. 657, 372 P.2d 649], italics omitted; *Southern Pac. Transportation Co. v. State Bd. of Equalization* (1985) 175 Cal.App.3d 438, 442 [221 Cal.Rptr. 12].) Thus, the doctrine gives effect to our preference for substance over form, but it does not allow for an excuse to literal noncompliance in every situation. (See *Malek, supra,* 121 Cal.App.4th at pp. 72–73.)

Once again we turn to *Malek, supra,* 121 Cal.App.4th 44, which addressed this same issue. There, on appeal Blue Cross did not dispute that it had failed to comply literally with the mandate of section 1363.1, but instead contended that its violation should be excused under the doctrine of substantial compliance. (121 Cal.App.4th at pp. 52, 72–73.) Specifically, Blue Cross argued that, by displaying the arbitration agreement close to the enrollee signature line and then giving the agreement prominent placement on the enrollment form, it had assured a knowing waiver of the jury trial right, and thus achieved substantial compliance with the substance of the statute. (*Id.* at pp. 72–73.)

The court rejected this argument, noting that the doctrine of substantial compliance excuses literal noncompliance only when there has been actual compliance with the essential objective of the statute. (*Malek, supra*, 121 Cal.App.4th at p. 72.) The objective of section 1363.1, the court held, was to ensure a knowing waiver of the right to a jury trial. (121 Cal.App.4th at p. 72) According to the court, Blue Cross's enrollment form did not actually comply with the objective. (*Id.* at p. 73.) The distance between Blue Cross's arbitration agreement and its enrollee signature line, as well as the intervening language between the two, left "doubt [as to] whether the Maleks knowingly waived their right to a jury trial." (121 Cal.App.4th at p 72.) Because there was no substantial compliance, the court affirmed the superior court's denial. (*Ibid.*)

On this issue we find the facts in *Malek* to be indistinguishable from those in the present case. Like Blue Cross, Health Net did not display its arbitration agreement directly above the enrollee signature line. There is some distance separating the two provisions. Additionally, as was true in *Malek*, there is intervening language between Health Net's arbitration agreement and the signature line provided for the individual on the enrollment form. Also, as we have already noted, the arbitration clause is in the same typeface as the rest of the document with only its two word title in bolded print.

Accordingly, we conclude, as that case did, that Health Net has not actually complied with the essential purpose of the statute. The space between the arbitration agreement and enrollee signature line and the intervening language "leaves in doubt whether [Robertson] knowingly waived [her] right to a jury trial." (*Malek, supra*, 121 Cal.App.4th at p. 73.) Consequently, we cannot excuse Health Net's violation of subsection (d) based on a theory of substantial compliance.[7]

---

[7] We need not address the balance of Health Net's arguments, because under our interpretation of the statute Health Net has not complied with section 1363.1, subdivisions (b) and (d). (See, e.g., *Imbler v. PacifiCare of Cal., Inc., supra*, 103 Cal.App.4th at p. 578 [choosing to rest decision on only one violation of section 1363.1's display requirements even though multiple arguments were raised].)

# IV.

## DISPOSITION

The superior court's order denying Health Net's petition to compel arbitration is affirmed. Respondent is entitled to her costs on appeal.

Kline, P. J., and Lambden, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 14, 2005.