Filed 11/27/23; Certified for Publication 12/6/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SALVATORE J. BAGLIONE, | B319659 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21STCV31846) |
| v. | |
| HEALTH NET OF CALIFORNIA, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Maurice A. Leiter, Judge.  Affirmed.

Husch Blackwell and Jules S. Zeman for Defendant and Appellant.

Gianelli & Morris, Robert S. Gianelli, Joshua S. Davis and Adrian J. Barrio for Plaintiff and Respondent.

Health Net of California, Inc. (Health Net) appeals the trial court's order denying its motion to compel arbitration of the breach of contract and bad faith causes of action brought against it by its insured, plaintiff Salvatore Baglione. The trial court found that the agreement between Health Net and plaintiff's employer, the County of Santa Clara (County), did not satisfy the disclosure requirements of Health and Safety Code[1] section 1363.1, rendering the arbitration provision of plaintiff's enrollment form unenforceable. Health Net contends it satisfied those disclosure requirements on the enrollment form signed by plaintiff.

We hold that the enrollment form does not comply with the requirements of section 1363.1. We also agree with the trial court that the County's agreement with Health Net is not compliant either, and an arbitration agreement, which is part of a health plan, is not enforceable unless both the enrollment form and the County agreement are compliant. Accordingly, we affirm the trial court's order.

## BACKGROUND

Plaintiff obtained his medical insurance through his employer, the County of Santa Clara. The County contracts with Health Net, among other health care plans, to provide medical insurance to its employees.[2]

---

[1] Further undesignated statutory references are to the Health and Safety Code.

[2] These agreements are yearly, and so four agreements cover the period at issue in this lawsuit. All contain identical arbitration provisions.

2

Plaintiff signed an enrollment form for Health Net in March 2019 as a new hire. In June 2019, he signed an enrollment form to add his child to his medical insurance. Both forms contained the same arbitration provision.

In or about June 2019, plaintiff was diagnosed with a painful and chronic condition. His physician determined that a monthly injectable medication was the appropriate treatment for plaintiff's condition. The medication to treat plaintiff was approved by the Food and Drug Administration. The drug met criteria to be covered by the pharmacy benefits of plaintiff's plan with Health Net, but Health Net required a prior authorization for the drug.

Health Net initially contended that injectable medications were the responsibility of plaintiff's medical group. Health Net authorized the drug in September 2019, denied the next request for authorization, occasionally thereafter authorized it, but primarily denied it.

In August 2020, plaintiff submitted a complaint to the California Department of Managed Health Care (DMHC). In October 2020, Health Net sent a letter to plaintiff stating the drug had been denied due to a technical error and Health Net was financially responsible for the medication. Health Net authorized the medication through June 2021. When plaintiff's physician tried to renew the authorization in 2021, Health Net again took the position that the medical group was financially responsible for the medication.

Plaintiff filed this lawsuit against Health Net in August 2021, alleging causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing.

Health Net promptly moved to compel arbitration of plaintiff's breach of contract and bad faith causes of action. Health Net asserted that plaintiff had agreed to arbitrate all disputes with Health Net when he completed the Health Net enrollment form.

Plaintiff opposed the motion, contending that Health Net failed to comply with the mandatory arbitration disclosure requirements of section 1363.1, subdivision (d), with respect to signature lines in both the group agreement between Health Net and the County and the individual enrollment form signed by plaintiff.

There is no dispute that the County agreement does not contain the required signature line immediately after the arbitration provision, as required by section 1363.1, subdivision (d). There is no dispute that plaintiff signed the enrollment form's signature line meant to apply to the arbitration clause. Health Net did not concede that any aspect of the arbitration disclosure in the enrollment form was out of compliance with section 1363.1.

The trial court agreed the group contract between the County and Health Net failed to comply with the requirements of section 1363.1, subdivision (d). The trial court did not rule on the enrollment form's compliance. This appeal followed.

## DISCUSSION

A.    *Enrollment Form*

"Section 1363.1 establishes mandatory disclosure requirements for health services plans that require binding arbitration. [Citations.] We review de novo the trial court's denial of the petition to compel arbitration based on the failure to comply with the requirements of section 1363.1." (*Rodriguez v.*

4

*Blue Cross of California* (2008) 162 Cal.App.4th 330, 335 (*Rodriguez*).) We are not bound by the trial court's rationale and may affirm its ruling on any correct legal theory supported by the record. (*Johnson v. The Raytheon Co., Inc.* (2019) 33 Cal.App.5th 617, 627, fn. 9; *Cheng-Canindin v. Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 683, fn. 3.)

The primary aim of section 1363.1 is "to protect health care consumers from the consequences of unknowingly waiving their right to a jury trial." (*Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 71 (*Malek*).) To accomplish this goal, section 1363.1 provides: "Any health care service plan that includes terms that require binding arbitration to settle disputes and that restrict, or provide for a waiver of, the right to a jury trial shall include, in clear and understandable language, a disclosure that meets all of [four listed] conditions[.]" (§ 1363.1.)

We find the enrollment forms do not comply with section 1363.1, subdivisions (a) and (c), both of which require clarity of disclosure. Subdivision (a) provides: "The disclosure shall clearly state whether the plan uses binding arbitration to settle disputes, including specifically whether the plan uses binding arbitration to settle claims of medical malpractice." (§ 1363.1, subd. (a).) Subdivision (c) provides: "The disclosure shall clearly state whether the subscriber or enrollee is waiving his or her right to a jury trial for medical malpractice, other disputes relating to the delivery of service under the plan, or both[.]" (*Id.*, subd. (c).)

The disclosure provision in this case begins by stating at some length that the enrollee agrees to arbitrate "any and all disputes," including medical malpractice. Then, however, the disclosure qualifies this broad language by mentioning that "a more detailed arbitration provision is included in the Evidence of

5

Coverage or Certificate of Insurance.  Mandatory arbitration may not apply to certain disputes if the Employer's plan is subject to ERISA,[3] 29 U.S.C. §§ 1001–1461."

By this point, the enrollee can only know which disputes he will have to submit to arbitration by determining whether his plan is covered by ERISA and then by determining what disputes "may" be exempted by ERISA.  The enrollee certainly cannot make this determination from the information in the enrollment form.[4]  This is not the clear disclosure of which disputes are subject to arbitration that is required by section 1363.1.

Health Net is not at the same disadvantage as its enrollees. Health Net explains quite clearly in its opening brief on appeal that the plan is not subject to ERISA because Santa Clara, "as a political subdivision of the State of California established and maintains health benefit plans . . . for its employees through third-party insurance companies, like Health Net.  [Health Net's

---

[3]      Employee Retirement Income Security Act of 1974.

[4]      If the enrollee turns to the Evidence of Coverage, and looks up arbitration, he will find only a statement that "Members who are enrolled in a plan that is subject to ERISA, 29 U.S.C § 1001 et seq., a federal law regulating benefit plans, are *not* required to submit disputes about certain 'adverse benefit determinations' made by Health Net to mandatory binding arbitration.  Under ERISA, an 'adverse benefit determination' means a decision by Health Net to deny, reduce, terminate or not pay for all or a part of a benefit."  The enrollee still will not know if their plan is subject to ERISA.  We do not know what an enrollee might find about ERISA in the other 162 pages of the Evidence of Coverage booklet, because it is not the enrollee's responsibility to scour the booklet for more information on this issue, and so we have not done so either.

6

plan] is a 'governmental plan' and exempt from ERISA. (29 U.S.C. § 1002(32)." Health Net does not explain why this inapplicable ERISA provision is mentioned in the arbitration disclosure and agreement provision of the enrollment form for County employees.

By placing these references to additional documents and inapplicable laws between the bulk of the disclosure and the signature line, Health Net also failed to comply with subdivision (d) which provides in pertinent part: "In any . . . enrollment agreement for a health care service plan, the disclosure required by this section shall be displayed . . . immediately before the signature line provided for the individual enrolling in the health care service plan."  (§1363.1, subd. (d).)

Even " '[t]echnical violations' of the statute—such as the failure to prominently display an arbitration provision immediately above the signature line on the enrollment form— 'render [the] arbitration provision unenforceable' regardless of whether the person enrolling in the health plan received some notice of the arbitration clause by reviewing the noncomplying provision." (*Medeiros v. Superior Court* (2007) 146 Cal.App.4th 1008, 1015, quoting *Malek, supra,* 121 Cal.App.4th at pp. 50, 72.)

 As the First District Court of Appeal has explained: "In plain and ordinary language, 'immediately before' means that the arbitration agreement must be typed in directly before the signature line provided for the individual on the enrollment form *without any intervening language.*" (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1426 (*Robertson*); see *Malek, supra*, 121 Cal.App.4th at pp. 62–63; see *Rodriguez, supra*, 162 Cal.App.4th at p. 338.)

Health Net contends that the intervening language in *Robertson*, *Malek* and *Rodriguez* all involved some subject other than arbitration, but the allegedly intervening language in this case "pertains to binding arbitration and the enrollees' waiver of jury trial. The sentences about which [p]laintiff complains relate directly to the disclosure requirements in section 1363.1 and the Parties' arbitration agreement."

In fact, they do not. Section 1363.1's disclosure requirements are not satisfied by references to Evidence of Coverage documents or Certificates of Insurance. Mentioning them is as much a digression as the HIV testing language in *Robertson*, the release of medical information language in *Malek* or the reference to class claims in *Rodriguez*. (*Robertson, supra*, 132 Cal.App.4th at p. 1423 ; *Malek, supra*, 121 Cal.App.4th at p. 62, *Rodriguez, supra*, 162 Cal.App.4th at p. 333.)

Section 1363.1 does not require any disclosure related to ERISA. The parties' arbitration agreement is not subject to ERISA and so mentioning ERISA does not relate to that agreement at all. Again, this language is a much a digression from the disclosure requirements as the language in *Robertson*, *Malek* and *Rodriguez*.

We recognize that the disclosure agreement contains one more sentence after the ERISA reference: "My signature below indicates that I understand and agree with the terms of this Binding Arbitration Agreement and agree to submit any disputes to binding arbitration instead of a court of law." This sentence is immediately followed by the signature line. Health Net does not contend that this sentence alone satisfies the disclosure requirement of section 1363.1. We agree with plaintiff that any sentence placed after intervening language would have to satisfy

8

all the specific requirements of section 1363.1, and this sentence does not.  (*Robertson, supra*, 132 Cal.App.4th at p. 1428.)

Compliance with the provisions of section 1363.1 is mandatory.  Health Net has not complied with respect to plaintiff's enrollment form, and the result is that the arbitration agreement is not enforceable.

B.    *County Agreement*

Assuming for the sake of argument that the enrollment form is compliant with section 1363.1, we also agree with the trial court's ruling that the County's agreement with Health Net did not comply with section 1363.1, subdivision (d).

Subdivision (d) provides in full: "*In any contract* or enrollment agreement for a health care service plan, the *disclosure required by this section shall be displayed immediately before the signature line provided for the representative of the group contracting with a health care service plan* and immediately before the signature line provided for the individual enrolling in the health care service plan."  (§ 1363.1, subd. (d), italics added.)

To state what should be obvious, subdivision (d) requires signature lines in both the enrollment form and the County's agreement with Health Net.  In the trial court, Health Net focused on its claim that plaintiff lacked standing to raise the noncompliance in the County agreement.

The trial court stated that it found Health Net's argument "unpersuasive.  The statute provides mandatory requirements for both group contracts and individual enrollment forms.  Courts have held that agreements not in compliance with these requirements are unenforceable, even where the individual had actual notice.  The group contract is a prerequisite to Plaintiff's

9

enrollment form; the group contract was entered into for the clear benefit of group members like Plaintiff.  As the group contract does not comply with section 1363.1, arbitration cannot be enforced against Plaintiff."

On appeal, Health Net's arguments of error are premised on its contention that the signature line provision for the enrollment form is intended only to ensure the enrollee has notice of the arbitration provisions applicable to the enrollee's disputes with the health plan, while the signature line provision for the representative of the group contracting with the health plan is intended only to ensure that the employer has notice of the arbitration provisions applicable to the employer's own disputes with the health plan.

Health Net almost immediately undercuts its own arguments with references to the legislative history and purpose of section 1363.1.  Health Net argues that the "legislative history focuses on [the] notice needs of enrollees—it contains no statement that the purpose of the legislation being to protect the interests of group employers."

"The purpose of this bill is to promote . . . consumer awareness of rights under health or disability insurance plans that require binding arbitration to resolve medical malpractice disputes."[5]  But we do not see how that purpose assists Health Net.  The legislation as passed *does* require a signature line for a representative of the employer in the employer's agreement with the health plan.  If the purpose of section 1363.1 is not to protect

---

[5] We take no position on the weight which should be given to this statement, which Health Net identified as an excerpt from the Senate floor analysis of Assembly Bill No. 3260 by the California Senate Rules Committee as amended August 24, 1994.

10

employers, then logically this signature line requirement for the employer-health plan agreement must be intended to protect enrollees.

Next, Health Net turns to plaintiff's standing. Here, Health Net adopts, without discussion, a contrary position: the purpose of the signature line requirement in the County agreement is to provide the County with notice that the County's own disputes with Health Net are subject to arbitration, and not to benefit plaintiff and so plaintiff lacks standing to enforce it.

Not only is this argument inconsistent with Health Net's prior argument that the purpose of the signature line is to protect the employees, it ignores the fact that an employer's agreement with a health plan is negotiated primarily for the benefit of the employees. "[A]n employer that negotiates group medical benefits for its employees acts as an agent for those employees during the period of negotiation. [Citation.] An agency relationship is a fiduciary one, obliging the agent to act in the interest of the principal." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 977.) Thus, a properly negotiated employee agreement is negotiated for the benefit of its employees.[6]

---

[6] Health Net's argument also ignores the language of the agreement, in which arbitration by the Group (County) and arbitration by enrollees are mentioned together, not discussed individually. The arbitration provision of the agreement begins by noting that "Sometimes disputes or disagreements may arise between Health Net and the Group or Members[.]" It continues "As a condition to contracting with Health Net, Group and Members agree to submit all disputes they may have with Health Net to final and binding arbitration."

Health Net's interpretation of section 1363.1 is not consistent with this requirement. Its interpretation would require a health plan to disclose to an employer that the employer is agreeing to arbitrate the employer's dispute with the health plans, but the health plan need not disclose to the employer, which is signing the agreement on behalf of its employees, that the employees will also be required to arbitrate their disputes with the health plan.

We see no basis for understanding section 1363.1 in this manner. If notice and disclosure are necessary to protect an employer who is giving up its right to a court or jury trial and agreeing to arbitration in an agreement, notice and disclosure to the employer are equally necessary to protect the employees on whose behalf the employer is negotiating the agreement.

Viewed differently, it is the agreement between the County and Health Net which sets the terms of the relationship between Health Net and County employees, including the employees' waiver of trial rights and acceptance of mandatory arbitration. Section 1363.1 requires specific disclosures of the trial rights waiver and arbitration provision for the agreement to be valid. Because section 1363.1 compliant notice is required for a knowing waiver of jury rights, if the notice provision in the agreement only tells the employer what rights it, as employer, is giving up, the employer has not knowingly waived the rights its employees are giving up.

It is well established that when a contract is made for the benefit of a person who is not a party to the contract, that person does have standing to enforce the contract. (See Civ. Code,

§ 1559.)[7] Health Net does not address this principle but instead attempts to side-step third party enforcement by arguing that "a stranger to an agreement has no standing to challenge its validity on the ground that it was not signed by the other parties in accordance with statutory requirements. (*Safarian* [*v. Govgassian* (2020)] 47 Cal.App.5th [1053,] 1066 ['Only the contracting parties have the power to ratify or avoid a voidable agreement . . .'].)"

Health Net next argues that the non-compliant arbitration provisions are voidable, not void. As we will explain, a noncompliant arbitration agreement is void, not voidable.

We agree with plaintiff that only voidable contracts can be ratified. (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 929–930.) We do not agree with Health Net that either the enrollment form or the County agreement are merely voidable.

Agreements to arbitrate that do not comply with section 1363.1 are void, not voidable. "The disclosure requirements are necessary to form a contractual arbitration agreement. The disclosures communicate the contractual consequences of the jury waiver to ensure a knowing waiver of the right to a jury trial. Assent these disclosure requirements, there is no contractual agreement to arbitrate." (*Malek, supra*, 121 Cal.App.4th at p. 66.)

---

7       Health Net just states the general rules that only the real party in interest has standing to sue and obtain relief in court (Code Civ. Proc., § 367), and that a party does not have standing to assert rights or interests belonging "solely" to others. (See, e.g., *Jasmine Networks, Inc. v. Superior Court* (2009) 180 Cal.App.4th 980, 992.)

13

Health Net next invokes estoppel, relying on the broad proposition that accepting the benefits of an agreement operates as an estoppel if the person acted with full knowledge of all material facts and circumstances, and with full knowledge of his rights. Assuming for the sake of argument that estoppel applies at all, Health Net does not explain how plaintiff had full knowledge that the County agreement did not comply with section 1363.1. We are not bound to make an appellant's argument for it. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)

C.      *The Federal Arbitration Act* (*FAA*)

The McCarran-Ferguson Act deprives Congress of the power to invalidate state law "regulating the business of insurance." (15 U.S.C. § 1012(b).) Section 1363.1 "does regulate the business of insurance within the meaning of McCarran-Ferguson. Therefore, the FAA, a federal statute of general application, which does not 'specifically relate' to insurance, is foreclosed from application to prevent the operation of section 1363.1. As a result, [the health care service plan's] arbitration provisions may not be enforced because of their failure to satisfy the specific and unambiguous disclosure requirements imposed by section 1363.1." (*Smith v. PacifiCare Behavioral Health of Cal., Inc.* (2001) 93 Cal.App.4th 139, 162.)

Health Net contends that the FAA is not reverse-preempted by the McCarren-Ferguson Act "where, as here, the FAA does not prevent state law from regulating the business of insurance, but rather merely requires that section 1363.1 be correctly applied under California law." As we have just explained, section 1363.1 has been correctly applied in this case.

14

Health Net also states more specifically that "the FAA governs where a [s]uperior [c]ourt's interpretation and application of a statute voids an arbitration agreement between an enrollee and his health plan that fulfills all notice requirements under state law."  The underlying premise of this argument is that the enrollment form "fulfills all notice requirements" of section 1363.1.  As we have explained, it does not.

Thus, the FAA does not require that we reverse the trial court's order and compel arbitration.

## DISPOSITION

The trial court's order is affirmed.  Health Net to pay costs on appeal.


STRATTON, P. J.

We concur:



GRIMES, J.



VIRAMONTES, J.

15

Filed 12/6/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SALVATORE J. BAGLIONE, | B319659 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21STCV31846) |
| v. | |
| HEALTH NET OF CALIFORNIA, INC., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed on November 27, 2023, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and is so ordered.

There is no change in the judgment.

_____

STRATTON, P. J.          GRIMES, J.          VIRAMONTES, J.