Filed 3/19/25  Solorzano v. Sunnova Energy Corp. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JORGE SOLORZANO et al., | D082830 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2022-00034714-CU-BC-NC) |
| SUNNOVA ENERGY CORPORATION et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Robert P. Dahlquist, Judge.  Affirmed.

McDowell Hetherington, Jodi K. Swick, Colleen T. Flaherty, Michael D. Matthews, Jr. and Diane S. Wizig for Defendants and Appellants.

Robinson Legal and Raymond G. Robinson for Plaintiffs and Respondents.

This appeal arises from a dispute over Sunnova Energy Corporation, Sunnova TE Management, LLC (collectively, Sunnova), and their contractors' installation of a solar energy system at the home of Jorge Solorzano, Eugenia Solorzano, and Cecilia Eugenia Solorzano.  The Solorzanos sued Sunnova and other parties, and Sunnova moved three times to compel arbitration under

two power purchase agreements. The trial court denied each motion. Sunnova raises three arguments on its appeal of the third denial.

As an initial matter, Sunnova claims the arbitration clauses delegate the question of arbitrability to the arbitrator, so the trial court erred in deciding the issue. We disagree. Because the Solorzanos claim Jorge's signatures and initials on both agreements, including the arbitration clauses they contain, were forged, whether a valid and enforceable arbitration agreement exists is an issue for the court, not the arbitrator, to decide.

Sunnova also contends the trial court erred in construing the motion as one for reconsideration under Code of Civil Procedure section 1008. Yet the trial court provided three independent, alternative grounds for denying the motion, only one of which relied on construing the motion as an improper section 1008 motion. Because we affirm based on one of those other grounds, we need not reach the parties' arguments related to section 1008.

Finally, Sunnova claims the trial court erred in finding it failed to meet its burden of proof to establish a valid and enforceable arbitration clause. Given the contradictory evidence as to the authenticity of Jorge's signatures and initials, Sunnova has not shown the trial court's decision is erroneous as a matter of law. Likewise, the evidence offered by Sunnova to authenticate Jorge's signatures and initials—including the DocuSign activity for Jorge's electronic signatures on the power purchase agreement, the transcript of a post-execution "validation call" between a Sunnova representative and Jorge, and a declaration from a Sunnova employee without personal knowledge of the circumstances surrounding the agreement's execution—is insufficient to find in Sunnova's favor.

We therefore affirm the order denying Sunnova's motion to compel.

I.

A.

In early 2020, Jorge and Eugenia began investigating solar energy system installation options for their home. The Solorzanos' home is jointly owned by Jorge and Eugenia as trustees of a family trust and their daughter Cecilia. Jorge and Eugenia are both primarily Spanish speakers. Eugenia speaks some English but has "limited" "understanding of a contract written in English." Jorge "speak[s] English hardly at all."

Eugenia and Jorge decided to hire Sunnova. On May 9, 2020, a Sunnova contractor's employee came to their home and made a Spanish-language pitch. He told them they needed to electronically sign several English-language documents on his tablet. Jorge and Eugenia believe they each signed two contracts, but they did not understand what they signed. They were not provided copies of the signed documents.

The Solorzanos ultimately were displeased with the installation of the solar energy system, so they filed a lawsuit against Sunnova and others.

B.

Sunnova moved to compel arbitration based on an arbitration clause within a power purchase agreement between Jorge and Sunnova that Jorge allegedly executed in his individual capacity on May 15, 2020, and as trustee of the family trust on May 19. Under the arbitration clause, "any dispute, claim or disagreement between you and us (a 'Dispute') shall be resolved exclusively by arbitration except as specifically provided below." Covered disputes "include but are not limited to: claims arising out of or relating to our relationship; claims that arose before this or any prior agreement (including, but not limited to, claims relating to advertising); consumer protection claims; and claims under any federal or state statute." The clause

3

further provided for arbitration "administered by the American Arbitration Association ('AAA') under its Consumer Arbitration Rules (the 'Rules')." As relevant, AAA Rule 14 provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim."

Because Sunnova failed to include any evidence in support of its motion, the court found it failed to sustain its burden of proving an arbitration agreement existed and denied the motion.

C.

Sunnova filed a second motion to compel. This time, Sunnova requested judicial notice of the AAA Rules and also appended a declaration of Benjamin Charles Browne, Sunnova's Vice President of Customer Operations; a copy of the May 15 agreement; and the DocuSign activity for the agreement, which shows the dates, times, and IP addresses associated with activities such as the sending, opening, and signing of the agreement. The DocuSign activity also shows the agreement was sent to a Yahoo e-mail address containing Eugenia's name.

The Solorzanos opposed, contending the agreement was a forgery, and supported their opposition with declarations and other evidence. Specifically, Jorge and Eugenia declared they signed two agreements on May 9 but not the one attached to Sunnova's motion. Jorge and Eugenia both declared they never signed anything on May 15 or 19. Jorge declared he has never had an e-mail account. Eugenia declared her sole e-mail account was an iCloud account and she has never owned the Yahoo e-mail address associated with the May 15 agreement.

4

Sunnova's reply included a further declaration from Browne attaching a power purchase agreement between Eugenia and Sunnova, allegedly executed by Jorge both in his individual capacity and as trustee on May 9, 2020, and the DocuSign activity for that agreement. The May 9 agreement contained the same arbitration clause as the May 15 agreement. The e-mail address associated with this agreement was a Gmail account with Eugenia's name. According to Browne, after Sunnova discovered the May 9 agreement identified Eugenia as the named party but contained Jorge's signatures and initials, Sunnova sent a subsequent agreement for both Jorge and Eugenia to sign. They did so on May 15, and afterwards Sunnova made a "validation call" to confirm Jorge's understanding of the agreement.

After "weigh[ing] and consider[ing] all of the evidence," the trial court granted Sunnova's request for judicial notice but denied its motion. This time, the court found Sunnova failed to carry its burden of proving the existence of an arbitration agreement between it and Jorge and Eugenia. It found "persuasive" Jorge and Eugenia's testimony that the signatures and initials on the May 15 agreement were forged and found "no persuasive evidence" the Yahoo e-mail address belonged to the Solorzanos. Meanwhile, it found Browne's testimony largely "not credible because, among other things," he lacked "personal knowledge of any actions by" Jorge or Eugenia. The court concluded "it is more likely than not" (1) the Sunnova contractor's employee who pitched Jorge and Eugenia "forged the[ir] electronic signatures and initials" and (2) Jorge and Eugenia "never signed or initialed" the agreement.

## D.

The Solorzanos filed an amended complaint, adding a request for declaratory relief as to the parties' "respective rights and duties under the

5

forged purchase agreement." Although Sunnova claims the Solorzanos relied on different versions of the agreement in the original and amended complaints, the Solorzanos again attached a copy of the May 15 agreement.

In response, Sunnova filed a third motion to compel arbitration. Sunnova filed another declaration by Browne, who now claimed the validation call occurred on May 9. Sunnova also submitted a copy of the May 9 agreement previously attached to its reply to the second motion, a copy of that agreement's DocuSign activity, and a transcript of a May 9 validation call between a Sunnova representative and Jorge.

The transcript reveals Jorge asked the caller, "Do you speak Spanish?" She responded she did but that "we need to do this call in English" because "your agreement is in English." In the background of the call, a man coaches Jorge on the e-mail address "just made . . . for your wife." The caller explained some of the terms of the power purchase agreement, confirmed Jorge had no questions, and confirmed he had read and understood the agreement.

The Solorzanos objected to the motion to compel, arguing the May 15 agreement "has previously been determined by this court to be a fraud" and that the May 9 agreement "is just as forged." The Solorzanos submitted declarations disputing the authenticity of the signatures and initials on the agreements. Eugenia disclaimed ever having Yahoo or Gmail e-mail addresses, which were associated with the May 15 and May 9 agreements, respectively. The Solorzanos argued the use of a new fraudulent e-mail address meant the May 9 agreement was also a forgery.

The hearing on the motion was unreported due to a last-minute scheduling change, and the minutes are nonsubstantive. In a minute order, "having fully considered the arguments of all parties, both written and oral,

6

as well as the evidence," the court denied Sunnova's third motion to compel. The court's first reason was that Sunnova failed to comply with section 1008. "Alternatively" and "disregarding" that defect, the court denied the motion "because the agreement upon which the moving parties rely is a 'home solicitation contract' (Civil Code § 1689.7) which has been cancelled by" Jorge and Eugenia such that they "sustained their burden of proving a ground for denial of the motion."

Finally, "as another separate and independent basis for denying the motion," the court concluded "the weight of the evidence does not establish" Jorge and Eugenia "themselves (as opposed to someone else, such as [the Sunnova contractor's employee]) signed and initialed the [May 9] agreement." Rather, "[t]he weight of the evidence indicates that [the contractor's employee] created an email account, purportedly on behalf of Jorge and Eugenia," "sent English documents pertaining to the transaction to that email address," and "signed and initialed documents, purportedly on" their behalf. The court again noted Browne lacked "personal knowledge of whether Jorge . . . and Eugenia . . . signed and initialed the [May 9] agreement." Meanwhile, the Sunnova contractor's employee was a defendant in the litigation, so "[i]t is reasonable to believe that if [he] could provide testimony supporting the moving parties' assertion that Jorge . . . and Eugenia . . . signed and initialed the [May 9] agreement . . . , the moving parties would have obtained and submitted that testimony." The court accordingly "distrust[ed] the evidence offered by" Sunnova under Evidence Code section 412. The court further "distrust[ed]" Sunnova's evidence given its failure to "provide[ ] evidence explaining the purported existence of two different agreements": the originally produced one executed May 15 and 19, and the subsequently produced one executed May 9.

7

## II.

### A.

As an initial matter, Sunnova contends the trial court "inappropriately reach[ed]" issues "reserved for arbitration" because the arbitration clauses here "require[ ] arbitrability be decided by an arbitrator."  Despite the Solorzanos' failure to brief the issue, Sunnova nonetheless must affirmatively establish error.  (*Miles v. Speidel* (1989) 211 Cal.App.3d 879, 881.)  It has not.

"Because the parties are the masters of their collective fate, they can agree to arbitrate almost any dispute—even a dispute over whether the underlying dispute is subject to arbitration."  (*Bruni v. Didion* (2008) 160 Cal.App.4th 1272, 1286.)  Yet, "[n]otwithstanding a provision that clearly and unmistakably delegates arbitrability issues to the arbitrator" (*Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1122), if a party "is claiming that it never agreed to the arbitration clause at all—e.g., if it is claiming forgery or fraud in the factum—then the court must consider that claim" (*Bruni*, at p. 1287).  This is because if "a party's apparent assent to a written contract is *negated* . . . , there is simply no arbitration agreement to be enforced."  (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 416.)

Here, the Solorzanos claim the signatures and initials on the agreements, including those for the arbitration clauses, were forged.  They thus contend they never entered into any arbitration agreement at all.  Accordingly, the Solorzanos "cannot be required to arbitrate *anything*—not even arbitrability—until a court has made a threshold determination that they did, in fact, agree to arbitrate *something*."  (*Bruni*, 160 Cal.App.4th at p. 1291.)

8

Sunnova's arguments to the contrary do not persuade us. As an example, Sunnova contends the Solorzanos' claim fails "because the Solorzanos attack the May 9 [agreement] as a whole, not the Arbitration Provision or delegation clause specifically." While "[o]rdinarily, the court cannot consider any claim that the contract as a whole is invalid," the court "still must consider one type of challenge to the overall contract: a claim that the party resisting arbitration never actually agreed to be bound." (*Bruni*, 160 Cal.App.4th at pp. 1283, 1284.) We are unpersuaded by Sunnova's reliance on an unpublished California federal district court decision that conflicts with California case law. (See *J.R. v. Electronic Arts Inc.* (2024) 98 Cal.App.5th 1107, 1115-1116 [rejecting claim that disaffirmance of contract as a whole does not specifically attack an arbitration delegation clause].)

On this record, we thus conclude the trial court did not err in deciding the issue of arbitrability.

### B.

Sunnova also argues the trial court erred by "primarily" denying its third motion to compel arbitration "as one for reconsideration" and asks us to review the denial of its motion under the standards applicable to motions to compel arbitration rather than motions for reconsideration.

The trial court provided three independent reasons for denying Sunnova's motion, only one of which relied on section 1008. Because the parties focus on the other two grounds for denial, we do the same, as we need not address the first to resolve this appeal.

### C.

The parties dispute the applicable standard of review. Sunnova argues either substantial evidence or de novo review applies, while the Solorzanos

9

claim "an even more exacting standard applies" because the court concluded Sunnova "failed to carry [its] burden of showing an arbitration agreement exists." We agree with the Solorzanos.

"There is no uniform standard of review for evaluating an order denying a motion to compel arbitration." (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.) "[I]f the court's denial rests solely on a decision of law, then a de novo standard of review is employed." (*Ibid.*) "If the court's order is based on a decision of fact, then we adopt a substantial evidence standard." (*Ibid.*) But if the order "is based on the court's finding that petitioner failed to carry its burden of proof, the question for the reviewing court is whether that finding is erroneous as a matter of law." (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066.)

Here, the trial court's order stemmed from it finding Sunnova failed to carry its burden of proof. "[T]he petitioner bears the burden of establishing the existence of a valid agreement to arbitrate, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense." (*Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 356.) Sunnova "met its initial burden to show an agreement to arbitrate by attaching a copy of the Contract to its petition, which purportedly bears [Jorge]'s electronic initials and signature." (*Fabian*, 42 Cal.App.5th at p. 1067.) The Solorzanos, however, met their subsequent burden by providing evidence that Jorge's signatures and initials were forged on the May 9 agreements. (*Ibid.*) Sunnova's reliance on *Iyere v. Wise Auto Group* (2023) 87 Cal.App.5th 747, 756, to argue otherwise is misplaced, as there "no plaintiff declared that he had *not* signed the agreement, or that his physical signature was forged or inauthentic."

10

Accordingly, the burden shifted back to Sunnova to "prov[e] by a preponderance of the evidence that the electronic signature was authentic." (*Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 846.) Yet Sunnova failed to carry its burden, as the trial court "distrust[ed] the evidence offered by" Sunnova under Evidence Code section 412, which states: "If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust."[1]

According to Sunnova, the record shows the Solorzanos repeatedly acknowledged signing the May 9 agreement. The Solorzanos' declarations do state the contractor's employee "presented a contract . . . for the installation of a solar energy system" on an electronic device, which they signed on that date. They also claim, however, that the May 15 contract—which is, other than the signatures, identical to the May 9 contract—was "different" from the contract they acknowledged signing and they "had never ever seen" the document prior to Cecilia showing it to them. They also argue both the May 9 and May 15 agreements were forged. The trial court considered and reconciled these and any other conflicts between the Solorzanos' declarations and evidence and the remainder of the record and concluded "[t]he weight of the evidence indicates that [the contractor's employee] signed and initialed

---

[1] At oral argument, Sunnova claimed this finding was erroneous, as it did not exercise control over the contractor's employee. Sunnova forfeited this issue by waiting until oral argument to raise it. (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554.) Further, when the movant fails to provide a record of the oral proceedings, "[t]he trial court's findings of fact and conclusions of law are presumed to be supported by substantial evidence and are binding on the appellate court, unless reversible error appears on the record." (*Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 924.) We discern no such error here.

11

documents, purportedly on behalf of Jorge and Eugenia." "We may not reweigh the evidence." (*Trinity*, 78 Cal.App.5th at p. 1124.) While Sunnova claims the Solorzanos' declarations are "not creditable," we must defer to the trial court's implicit credibility findings.

Under these circumstances, the standard of review advanced by the Solorzanos applies. We deem forfeited Sunnova's public policy arguments against that standard, which are unsupported by citations to appropriate legal authority. (See *LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Association* (2023) 94 Cal.App.5th 1050, 1071.)

D.

Applying the proper standard of review, the relevant inquiry is "whether [Sunnova's] evidence was (1) uncontradicted and unimpeached and (2) of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." (*Trinity*, 78 Cal.App.5th at p. 1121 [cleaned up].) It was not.

As the Solorzanos note, Sunnova's evidence purporting to establish the authenticity of Jorge's signatures and initials on the power purchase agreements and the arbitration clauses they contained was contradicted by Jorge and Eugenia's evidence they did not sign or initial those agreements. That contrary evidence is reason alone for us to conclude Sunnova is not entitled to appellate relief.

Nor was Sunnova's evidence of such character and weight as to compel a finding in its favor. "[T]he burden of authenticating an electronic signature is not great." (*Ruiz*, 232 Cal.App.4th at p. 844.) "An electronic record or electronic signature is attributable to a person if it was the act of the person," which "may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the

electronic record or electronic signature was attributable" (Civ. Code, § 1633.9, subd. (a)) or "by presenting evidence of the contents of the contract in question and the circumstances surrounding the contract's execution" (*Fabian*, 42 Cal.App.5th at p. 1068).

Here, none of the evidence Sunnova submitted cleared this hurdle. The DocuSign history is insufficient to authenticate Jorge's signatures and initials. While Browne's declaration provides some information about Sunnova's general practice of using DocuSign, Sunnova "offered no evidence about the process used to verify [Jorge]'s electronic signature via DocuSign." (*Fabian*, 42 Cal.App.5th at p. 1069.) Sunnova's attempts to distinguish *Fabian*, which is directly on point, do not persuade us. While there are factual differences between *Fabian* and the matter before us, Sunnova's distinctions rely on the premise—rejected above—that the Solorzanos repeatedly admitted to signing the May 9 power purchase agreement.

Browne's declaration is inadequate because it "did not suggest how the electronic signature could have only been placed on the" power purchase agreement by Jorge. (*Fabian*, 42 Cal.App.5th at p. 1070.) And as Browne was not present at the time of the signing, he could not provide "any specific details about the circumstances surrounding the Contract's execution." (*Ibid.*)

The same is true of the "validation call" transcript. Browne was not a party to the conversation with personal knowledge of what happened, and the transcript—of a transaction occurring *after* the May 9 agreement's purported execution—does not compel a finding in Sunnova's favor. If anything, the call undercuts Sunnova's position that the agreements are valid and binding. As the Solorzanos note, the transcript shows Jorge asked that the call be in Spanish, but his request was refused. The transcript also indicates someone

13

employed by Sunnova or one of its contractors created an e-mail account for the transaction. This bolsters the Solorzanos' evidence the e-mail address was created and controlled by the Sunnova contractor's employee who pitched them. Collectively, this evidence does not conclusively establish Jorge, rather than someone else, was the signatory.

As Sunnova fails to establish its evidence was uncontradicted and compelled a finding in its favor as a matter of law, we conclude the trial court did not err in denying Sunnova's motion to compel arbitration. Because we may affirm an order if it is correct on any theory "regardless of the correctness of the [other] grounds upon which the lower court reached its conclusion," we need not decide whether (1) the arbitration clauses are unconscionable or (2) Jorge and Eugenia cancelled the agreements under Civil Code section 1689.7 and the effect of any such cancellation on the arbitration clauses' enforceability. (*Estate of Beard* (1999) 71 Cal.App.4th 753, 776-777.)

III.

We affirm. The Solorzanos are entitled to their costs on appeal.


CASTILLO, J.

WE CONCUR:


McCONNELL, P. J.


DO, J.

14